In the Matter of TRIM-LEAN MEAT PRODUCTS, INC., a Delaware Corporation, Debtor.

Warren F. BEASLEY, Trustee of Trim-Lean Meat Products, Inc., Plaintiff-Appellee,

v.

KELCO FOODS, INC., an Illinois Corporation, Defendant-Appellant.

Civ. A. No. 80–549.

United States District Court, D. Delaware.

June 8, 1981.

Henry A. Heiman, Wilmington, Del., for debtor.

Eduard F. von Wettberg, III, Daniel H. Krapf, Morris, James, Hitchens & Williams, Wilmington, Del., for plaintiff-appellee.

F. L. Peter Stone, Connolly, Bove & Lodge, Wilmington, Del., John Burke, Marilee Roberg, Pedersen & Houpt, Chicago, Ill., for defendant-appellant.

## MEMORANDUM OPINION

### STAPLETON, District Judge:

This case comes before me on defendant Kelco's appeal of the October 8, 1980 Order of Judge Balick of the Bankruptcy Court for the District of Delaware.[1] That Order denied Kelco's motion to dismiss for improper venue and lack of personal jurisdiction and, in the alternative, to transfer the proceedings.

Kelco is an Illinois corporation whose only contacts with this forum revolve around certain sales of unfinished meat products to Trim-Lean Products, the debtor. The trustee claims that the transfer back to Kelco of the finished meat products, and the payment of certain funds, were made after the petition for bankruptcy was filed and thus are part of the estate.

During oral argument, counsel for Kelco conceded the subject matter jurisdiction and venue of this district's Bankruptcy Court under 28 U.S.C. §§ 1471, 1473(a); the propriety of venue in the District of Delaware is set out in Judge Balick's opinion.

The question at issue is whether the Bankruptcy Court for this district may exercise *in personam* jurisdiction over a defendant who was served in Illinois and who claims to have minimal, if any, contacts with Delaware. The trustee claims that such jurisdiction may be asserted under 28 U.S.C. § 1471 when that statute is read in conjunction with Bankruptcy Rule ("BR") 704(f)(1), which authorizes nationwide service of process, and the Bankruptcy Court so found. Appellant counters that the

Bankruptcy Court cannot exercise *in personam* jurisdiction over Kelco in this action for two reasons: (1) BR 704's provision for service of process is meant to apply only to cases in which the Bankruptcy Court is exercising *in rem* jurisdiction over property, and (2) an assertion of personal jurisdiction over a company having such limited ties with the forum state violates due process. I will address these arguments seriatum.

The jurisdiction of the Bankruptcy Court under the old Bankruptcy Act was *in rem*, and turned, absent consent of an adverse party, upon "possession of property." The Bankruptcy Court had the power to send its process throughout the United States to the extent of its limited jurisdiction. 1 *Collier on Bankruptcy* (15th ed.), ¶ 3.01 at 3–55. With the passage of the Reform Act,[2] Congress expanded that jurisdiction to include all civil proceedings arising under Title 11 or related to a Title 11 case:

> ...(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive *jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.*
>
> (c) The bankruptcy court for the district in which a case under title 11 is commenced shall exercise all of the jurisdiction conferred by this section on the district courts. ... (emphasis added).

28 U.S.C. § 1471. This broad grant of power authorized the bankruptcy courts to entertain suits seeking personal judgments as well as those seeking *in rem* judgments. As the Senate Committee Report observed:

> The adjunct bankruptcy courts will exercise in personal [sic] jurisdiction as well as in rem jurisdiction in order that they may handle everything that arises in a bankruptcy case.

---

1. This is an appeal from an interlocutory order; jurisdiction of this Court is based in 28 U.S.C. § 1334(b). Since the action was filed after October 1, 1979, the provisions of the new Bankruptcy Code apply.

2. Bankruptcy Reform Act of 1978, Pub.L.No. 95–598, 92 Stat. 2549 (1978) (the "Act" or the "Reform Act").

Senate Report No. 989, 95th Cong., 1st Sess. 153–54 (1978); U.S.Code Cong. & Admin. News 1978, pp. 5787, 5939.[3]

When Congress thus expanded the subject matter jurisdiction of the bankruptcy courts, it concurrently stipulated that the Bankruptcy Rules then in effect would continue in effect until new rules were adopted.[4] Rule 704 of those rules reads in pertinent part as follows:

(f) Territorial Limits of Effective Service.

(1) The summons, together with the complaint and notice of trial or pretrial conference, and all other process except a subpoena may be served anywhere within the United States.

■ This is the only provision for service of process in the Rules. On its face it authorizes national service of process in all bankruptcy cases, without limitation. Congress must have been aware of this fact when it expressly confirmed the existing rules. Yet it neither imposed any restriction on nationwide service in the Reform Act itself nor noted any intended restriction in the course of the legislative history. In this context, I read Rule 704 to mean what it says on its face. Accordingly, I hold that Rule 704 authorizes national service of process in all actions in the bankruptcy courts.

The venue and transfer provisions of the Act and their legislative history provide additional support for this conclusion. The Report of the Commission on the Bankruptcy Laws of the United States, which led to the drafting and passage of the Act, recognized the desirability of centering all litigation involving a bankrupt in the bankruptcy court where the bankruptcy is pending. At the same time, however, it realized that this could pose problems for adverse parties at distant locations. The Report observes, for example:

Another objection to the [current] division of jurisdiction [between the bankruptcy court and non-bankruptcy courts] is the extra expense entailed by the estate in litigating outside the bankruptcy court. The expense differential is likely to be most pronounced when it is necessary for the trustee to sue the adversary party in a distant court. The greater convenience of the forum of the bankruptcy court to the trustee may, of course, be a decided disadvantage to his adversary, and no fair system of judicial administration can consider only the convenience and expense of one party to a dispute in litigation. Nonetheless, it is common knowledge that trustees have often foregone litigation to recover assets of estates because of the potential expense and other difficulties of litigating in distant courts, having limited resources with which to wage such litigation. What is needed is a system which diminishes the handicaps imposed on litigation by the trustee in the bankruptcy court by the jurisdictional limitations, while providing a mechanism for assuring convenience to all parties to particular litigation and ensuring that the more general public interest in a fair and expeditious disposition of the litigation will be appropriately balanced in the final selection of a forum.

Reprinted in *Collier on Bankruptcy*, Appendix Z, at 89–90 (15th ed. 1979).

The "system" ultimately agreed upon in the Reform Act to accomplish these objectives was one which presumptively centered all bankruptcy-related litigation in one bankruptcy court, but provided exceptions to the general rule in certain cases where there was a non-forum district defendant. The Act's venue provisions establish a gen-

---

**3.** *See also*, House Report No. 595, 95th Cong., 1st Sess. 445–46 (1977); *Scott v. Fort Ord Federal Credit Union*, 5 B.R. 220, 2 C.B.C.2d 544, 548 (Bkrtcy., W.D.Tenn.1980); 1 *Collier on Bankruptcy* ¶ 1.03, at p. 1–21 (15th ed. 1979).

**4.** Bankruptcy Reform Act of 1978, Title IV, § 405(d): "The rules prescribed under section 2075 of title 28 of the United States Code and in effect on September 30, 1979, shall apply to

cases under title 11, *to the extent not inconsistent with the amendments made by the Act*, or with this Act, until such rules are repealed or superseded by rules prescribed and effective under such section, as amended by section 248 of this Act." There is nothing inconsistent between a literal interpretation of BR 704 and the Bankruptcy Reform Act as amended.

eral rule that venue will lie in the bankruptcy court in which the bankruptcy is pending. The Act goes on to provide, however, that actions involving small claims (i. e. those where the trustee's claim involves a money judgment of, or property worth, less than $1,000, or a consumer debt of less than $5,000), may only be prosecuted in the bankruptcy court for the district in which the defendant resides.[5] 28 U.S.C. § 1473(a) and (b). The Senate Report indicates that this exception to the general rule is intended to prevent "unfairness to distant debtors of the estate, when the cost of defending might be greater than paying the debt owed." S.Rpt. 989, 95th Cong., 1st Sess. 155 (1978), U.S.Code Cong. & Admin.News 1978, p. 5941. In addition, the Act provides that a bankruptcy court may transfer a case or proceeding to another bankruptcy court "in the interests of justice and for the convenience of the parties." 28 U.S.C. § 1475.

The kind of efficiency which Congress sought to promote cannot be achieved without extra-district service of process and it is highly unlikely that Congress contemplated that its new "system" would operate without that potential for bringing litigants to the trustee's bankruptcy court. It is far more likely that Congress intended to authorize extra-district service and to rely on the transfer and special venue provisions of the Act to safeguard against unfairness to the defendant. Since a literal reading of BR 704 is the only possible source of authority for extra-district service, it follows that Congress must have contemplated nationwide service of process.

■ Kelco next argues that, even if the Act purported to authorize national service of process, it would be unconstitutional as applied to individuals who lack the kind of minimum contacts with the forum district which were held in *International Shoe v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), to be a prerequisite for the exercise of judicial jurisdiction by a state over a foreign corporation. I disagree.

Kelco asserts that the Fifth Amendment, read in light of the new learning in *Shaffer*

*v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), imposes a "rule of reason" restriction on Congress's power to authorize nationwide service of process. I agree with the Court of Appeals for the Seventh Circuit, however, that the "fairness" spoken of in *Shaffer* "relates to the fairness of the exercise of power by a particular sovereign, not the fairness of imposing the burden of litigating in a distant forum" and that "a resident citizen of the United States has sufficient contacts with the United States to support the fairness of the exercise of jurisdiction over him by a United States court." *Fitzsimmons v. Barton*, 589 F.2d 330, 333 (7th Cir. 1979). *See also, Mariash v. Morrill*, 496 F.2d 1138, 1143 (2d Cir. 1974); *Shlomchik v. Retirement Plan of Amalgamated Insurance*, 502 F.Supp. 240, 244 (E.D.Pa.1980); *Gilbert v. Bagley*, 492 F.Supp. 714, 747 (M.D.N.C. 1980); *United States v. McAninch*, 435 F.Supp. 240, 244 (E.D.N.Y.1977); *Kramer v. Scientific Control Corp.*, 365 F.Supp. 780, 787 (E.D.Pa.1973); *Holt v. Klosters Rederi A/S*, 355 F.Supp. 354, 357 (W.D.Mich.1973). *But see, Oxford First Corporation v. PNC Liquidating Corp.*, 372 F.Supp. 191 (E.D.Pa. 1974).

■ It is not necessary to fully embrace the rationale of the *Fitzsimmons* case, however, in order to resolve the case before me. The Trustee alleges that Kelco and certain employees of the debtor acting at Kelco's instruction converted property which was in the Trustee's possession at the debtor's Delaware facility and transported it to a Kelco warehouse in nearby Pennsylvania. (Complaint ¶¶ 8–10). In addition, the Trustee alleges that, after his appointment, certain employees of the debtor wrongfully delivered a check to Kelco in Delaware. (Complaint ¶ 12). It is thus apparent that both of the claims which the Trustee here presses against Kelco arose in this district. If contact with this district were constitutionally required this contact would suffice.

■ Lastly, Kelco argues that venue should be transferred to Illinois under 28

---

5. The other exceptions to the general venue provision deal with claims arising from operation of the debtor's business after commencement of the Title 11 claim.

U.S.C. § 1475. It has not made a showing, however, which would justify overruling the Trustee's choice of forum.

First of all, while litigation in Delaware may involve some inconvenience for Kelco, it cannot be said that the convenience of the parties favors Illinois as a forum. That forum is no less inconvenient for the Trustee than Delaware is for Kelco.

Moreover, Delaware is the site of the Trim-Lean warehouse, the place where the alleged wrongful appropriations occurred, and is proximate to Kelco's Philadelphia warehouse. Thus, it can be expected that the bulk of the witnesses will find Delaware a more convenient forum.

Finally, the interest of justice is best served by keeping venue in this district where compulsory process can reach those who may have been involved in any misappropriations.

The decision of the Bankruptcy Judge will be affirmed.