In re AMERICAN ALUMINUM WINDOW CORP., Debtor.

John L. WHITLOCK, Trustee of American Aluminum Window Corp., Plaintiff,

v.

George S. WORRALL and Graham Glass, Inc., Defendants.

Bankruptcy No. 81–1037–HL.
Adv. No. 81–860.

United States Bankruptcy Court, D. Massachusetts.

Dec. 9, 1981.

Charles P. McGinty, Herrick & Smith, Boston, Mass., for plaintiff trustee.

Simon C. Leeming, Boston, Mass., for defendant Worrall.

Girard R. Visconti, Providence, R. I., for defendant Graham Glass, Inc.

1. The money allegedly owed by Graham Glass to the Debtor is the subject of another adver-

## MEMORANDUM ON COURT'S DENIAL OF MOTION TO DISMISS FOR LACK OF JURISDICTION AND FINDING ON DISCHARGE OF LIEN

HAROLD LAVIEN, Bankruptcy Judge.

This proceeding to void a judicial lien as a preference under 11 U.S.C. § 547 came on to be heard on Defendant's Motion to Dismiss for lack of personal jurisdiction.

The Defendant, George S. Worrall, was formerly a salesman for the Debtor. On or about May 11, 1981, the Defendant filed suit in the Rhode Island Superior Court, Kent County, for $9,120.00 of alleged commissions due. Pursuant to that action, Defendant Worrall sought a restraining order and an attachment on trustee process requiring Defendant, Graham Glass, Inc., to hold and maintain, and not to transfer $10,-000 of monies allegedly due the Debtor[1] as security for any affirmative judgment Defendant, Worrall, might obtain against the Debtor. On May 11, 1981, the Restraining Order was issued, and on May 21, 1981 a Writ of Attachment was issued by the Rhode Island Superior Court.

The Debtor filed a voluntary petition in Chapter 7 on June 11, 1981. A trustee was appointed on June 12, 1981. On October 16, 1981, the Trustee filed a complaint against both George Worrall and Graham Glass, Inc. to recover a preferential transfer. The Defendant, George S. Worrall, appeared specially through counsel to argue this Motion to Dismiss. Defendant, Graham Glass, Inc. did not appear to contest this Court's jurisdiction. The Motion to Dismiss is denied.

Defendant argues that the basis for personal jurisdiction is governed by the Massachusetts Long Arm Statute, Mass.Gen.Laws Ann. ch. 223A, §§ 1–14, and since Defendant was employed and worked in Rhode Island, the necessary minimum contacts did not exist.

sary proceeding in this Court.

■ Initially, the objection is misconceived since the recovery of a preference requires an in rem jurisdiction over the property of the estate and not necessarily an in personam jurisdiction over the Defendant, Worrall.

The preference section 11 U.S.C. 547 provides:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—

(4) made—

(A) on or before 90 days before the filing of the petition;

11 U.S.C. § 541 broadly defines property of the estate to include "all legal and equitable interests of the debtor as of the commencement of the case." The term "transfer" is defined in 11 U.S.C. § 101(40) and includes "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest." Both terms are broadly defined so that the Trustee can reach any alienation of property no matter how characterized.

Where property of the estate is concerned, the Code explicitly provides for jurisdiction.

The bankruptcy court in which a case under title 11 is commenced shall have exclusive jurisdiction of all property, wherever located, of the debtor, as of the commencement of such case. 28 U.S.C. § 1471(e).

Since this bankruptcy case was filed after October 1, 1979, it is controlled by the Bankruptcy Reform Act.[2]

While the new Code makes a jurisdictional leap in many areas, this need not be one of them. Even under the old Act, the Referee or Bankruptcy Judge was given summary jurisdiction to set aside a judicial lien

obtained while Debtor was insolvent and within four months of filing. 11 U.S.C. § 107(a)(4). (Bankruptcy Act of July 1, 1898, repealed October 1, 1979, Act of November 6, 1978, P.L. 95–598, § 401).

Under the 1978 Act, no equivalent to Section 107(a)(4) is necessary, since it is now provided for under the preference section 11 U.S.C. § 547, and the jurisdictional grant in 28 U.S.C. § 1471.

■ The source of the Bankruptcy Court's jurisdiction, whether in rem or in personam, comes directly from the 1978 Bankruptcy Act and not from any state long arm statute. The basic jurisdictional provision of this Court is set forth in 28 U.S.C. § 1471:

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.

(c) The bankruptcy court for the district in which a case under title 11 is commenced shall exercise all of the jurisdiction conferred by this section on the district courts.

Congress has made it clear in the history of the Reform Act that it desired to create a new all pervasive jurisdiction so that the bankruptcy administration would be expeditious and efficient, avoiding the wasteful disputes over summary and plenary jurisdiction, possession and consent, adverse or colorable claims, proceedings under the Act or arising in proceedings in bankruptcy. To quote from the Congressional history:

---

**2.** Act Nov. 6, 1978, P.L. 95–598, Title IV, § 402 and § 405.

Section 405(b). During the transition period the amendments made by §§ 241, 243, 250 and 252 of this Act shall apply to the courts of bankruptcy continued by § 404(a) of this Act the same as such amendments apply to the

United States Bankruptcy Courts established under § 201 of the Act.

Section 241 amends title 28 to add §§ 1471 through 1482 which cover jurisdiction, venue, removal and other provisions of bankruptcy jurisdiction.

Subsection (b) (of § 1471) is a significant change from current law. It grants the bankruptcy court original (trial), but not exclusive, jurisdiction of all civil proceedings arising under title 11 or arising under or related to cases under title 11. This is the broadest grant of jurisdiction to dispose of proceedings that arise in bankruptcy cases or under the bankruptcy code. Actions that formerly had to be tried in State court or in Federal district court, at great cost and delay to the estate, may now be tried in the bankruptcy courts. The idea of possession or consent as the sole basis for jurisdiction is eliminated. The bankruptcy court is given in personam jurisdicition (sic) as well as in rem jurisdiction to handle everything that arises in a bankruptcy case.

H.R.Rep.No.95–595, 95th Cong., 1st Sess. 445–446 (1977), U.S.Code Cong. & Admin. News 1978, pp. 5787, 6400–6401.

Congress derives its powers to create a comprehensive grant of jurisdiction to the bankruptcy courts from Article 1, Sec. 8, Cl. 4 of the Constitution which gives Congress the authority "to establish ... uniform laws on the subject of bankruptcy." Although the Bankruptcy Act of 1898 limited the jurisdictional grant of the bankruptcy courts, this was done by choice and not because of some constitutional prohibition. In *Taubel-Scott-Kitzmillel Co. v. Fox*, the Supreme Court acknowledged Congress' power to broaden or narrow the jurisdiction of the bankruptcy court:

> Congress has, of course, power to confer upon the bankruptcy court jurisdiction to adjudicate the rights of trustees to property adversely claimed. In matters relating to bankruptcy its power is paramount. Hence, even if the property is not within the possession of the bankruptcy court; Congress can confer upon it, as upon any lower federal court, jurisdiction of the controversy, by conferring jurisdiction over the person in whose possession the property is. 264 U.S. 426, 430, 44 S.Ct. 396, 398, 68 L.Ed. 770 (1924).

In the 1978 Act under § 1471, Congress has conferred upon the bankruptcy courts exactly the in personam jurisdiction to which the Supreme Court referred.

The Supreme Court has on other occasions considered Congress' constitutional right to create Article I courts with broad bankruptcy jurisdiction. In *National Mutual Insurance Co. v. Tidewater Transfer Co., Inc.*, 337 U.S. 582, 594–600, 69 S.Ct. 1173, 1178–82, 93 L.Ed. 1556 (1949) (hereinafter *Tidewater*), the Supreme Court had to examine the constitutionality of the exercise of judicial power by the District of Columbia courts conferred on them by Congress pursuant to Article I. In enumerating Congress' powers under Article I, the Court carefully examined Congress' power "to establish uniform laws on the subject of bankruptcies." The Court stated that Congress, by virtue of Article I, may grant access to a court and may designate the district court and give to the district courts jurisdiction over cases between the trustee and others that, but for the bankruptcy powers, would be beyond their jurisdiction because of the lack of diversity or the existence of a federal question under Article III. *Tidewater, supra* at 594, 69 S.Ct. at 1178, citing *Schumacher v. Beeler*, 293 U.S. 367, 55 S.Ct. 230, 79 L.Ed. 433 (1934) (hereinafter *Beeler*) and *Williams v. Austrian*, 331 U.S. 642, 67 S.Ct. 1443, 91 L.Ed. 1718 (1947) (hereinafter *Austrian*). Both cases involved jurisdictional challenges since they were not diversity cases and the main controversy did not involve a federal question but arose under state law. In *Beeler*, the Court had to interpret the newly amended § 23(b) of the old Bankruptcy Act which previously provided for jurisdiction absent possession over adverse claimants only if they consented. Congress had amended § 23(b) to provide that consent was not necessary in suits by the trustee to recover preferences and fraudulent conveyances within four months of bankruptcy. The Court upheld this grant of jurisdiction stating that "Congress, by virtue of its constitutional authority over bankruptcies, could confer or withhold jurisdiction to entertain such suits and could prescribe the conditions upon which the federal courts should have jurisdiction." *Beeler, supra* 293 U.S. at 374,

55 S.Ct. at 233. In the *Austrian* case, the Court held that by eliminating § 23(b) from Chapter X of the Bankruptcy Act, Congress intended to establish the jurisdiction of the federal courts to hear plenary suits brought by the reorganization trustee, even though diversity or other usual ground for federal jurisdiction was lacking. Although the dissent disagreed with this interpretation of Congressional intent, the dissent did state that there was "(n)o doubt Congress could authorize such a suit." *Austrian, supra* 331 U.S. at 664, 67 S.Ct. at 1454 (Frankfurter, J., dissenting).

In both *Austrian* and *Beeler*, the Court assumed that Congress had the power to confer on the district courts jurisdiction of nondiversity suits involving only state law questions. "In view of Congress' plenary control over bankruptcies, the Court may have grounded such assumption on Article I." *Tidewater, supra* 337 U.S. at 596, 69 S.Ct. at 1180. The Court in *Tidewater* went on to consider whether the Court could have based its finding of constitutional jurisdiction in both *Austrian* and *Beeler* upon Article III. The Court concluded that such jurisdiction could have only been grounded in Article I since neither case arose under the laws of the United States or the Constitution. Both cases required a determination of state law. "The fact that the congressional power over bankruptcy granted by Article I could open the court to the trustee does not mean that such suits arise under the laws of the United States; *but it does mean that Article I can supply a source of judicial power for their adjudication*." *Id.* 337 U.S. at 599, 69 S.Ct. at 1181 (emphasis added). It is true that these cases involve Article III courts but if they are exercising jurisdiction conferred on them not because of their Article III nature, but because of Congress' Article I power, then Congress, presumably, can choose to delegate for the resolution of those problems courts of its own creation.

We conclude that where Congress in the exercise of its powers under Art. I finds it necessary to provide those on whom its power is exerted with access to *some kind of court or tribunal* for determination of controversies that are within the traditional concept of the justifiable, it may open the regular federal courts to them regardless of lack of diversity of citizenship. The basis of the holdings we have discussed is that, when Congress deems that for such purposes it owes a forum to claimants and trustees, it may execute its power in this manner. *Id.* at 600, 69 S.Ct. at 1182 (emphasis added).

If that is true, when the primary issue is a question of state law, how much more so should it be when, as in this proceeding, we are dealing with a matter that is uniquely a creation of the bankruptcy law, namely, preferences, which would be perfectly valid but for the bankruptcy law.

In only two cases [2a] has the Supreme Court challenged Congress' enactments under the Bankruptcy Clause and almost immediately thereafter in two other cases substantially reasserted Congress' primacy.

The Defendant argues that there is not sufficient nexus between the Defendant's employment in Rhode Island and the Debtor's bankruptcy petition to confer personal jurisdiction over the Defendant. Additionally, Defendant argues that the basis for jurisdiction over a person not served within the Commonwealth of Massachusetts is governed by the Massachusetts Long-Arm statute, Mass.Gen.Laws Ann. ch. 223A, §§ 1–14.

■ The jurisdiction of a federal court when it is applying a federal statute is not limited by state law. It is not the Commonwealth of Massachusetts but the United States which is exercising its jurisdiction

---

**2a.** *Ashton v. Cameron County Dist.*, 298 U.S. 513, 56 S.Ct. 892, 80 L.Ed. 1309 (1936) rehearing denied 299 U.S. 619, 57 S.Ct. 5, 81 L.Ed. 457; called legally indefensible and overruled in *U. S. v. Bekins*, 304 U.S. 27, 58 S.Ct. 811, 82 L.Ed. 1137 (1938), rehearing denied 304 U.S. 589, 58 S.Ct. 1043, 82 L.Ed. 1549. See also,

*Wright v. Vinton Branch of the Mountain Trust Bank of Roanoke*, 300 U.S. 440, 57 S.Ct., 556, 81 L.Ed. 736 (1937), confirmed 88 F.2d 1015 (4th Cir.) distinguished *Louisville Joint Stock Bank v. Radford*, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935) on ground that Act not reasonably framed.

over the Defendant. In *Erie Railroad v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938), the Supreme Court stated that "(e) except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the State." The Bankruptcy Reform Act is such an Act of Congress and § 1471 controls the jurisdiction of the Bankruptcy Court. Therefore, under even the court created Erie doctrine, the Bankruptcy Court does not look to the Massachusetts Long-Arm statute to determine the extent of its in personam jurisdiction. *In re G. Weeks Securities, Inc.*, 5 B.R. 220 (B.C.W.D. Tenn.1980). *See generally* Wright & Miller, *Federal Practice & Procedure* § 1075 n. 26 and cases cited therein.

■ Even under Article I Section 8, Clause 4, any Congressional enactment must not extend beyond the constitutional limits of due process. However, the concept of due process, sometimes roughly equated with fair play is not a static or precise concept, *Wright v. Vinton Bank*, 300 U.S. 440, 57 S.Ct. 556, 81 L.Ed. 736 (1937) (affirming constitutionality of new Frazier-Lemke Act), the year after *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935) determined that the Frazier-Lemke Act violated Fifth Amendment due process. How much less was the mortgagee's security interest actually impaired?

The courts have found various bankruptcy provisions necessary or reasonably framed to carry out a bankruptcy purpose and not to be a violation of due process. For example, an injunction restraining the sale of collateral pursuant to Section 77 of the old Bankruptcy Act was not such an impairment of contractual obligations as to violate due process. *Continental Illinois National Bank v. Chicago, Rock Island & Pacific Ry. Co.*, 294 U.S. 648, 55 S.Ct. 595, 79 L.Ed. 1110 (1935).

The test recently enunciated by the First Circuit to find any provision of the Bankruptcy Reform Act unconstitutional was that it must be shown that the legislation is so unreasonable or arbitrary that it violates due process or results in a taking of property without just compensation. Here, the denial of priority which would assure payment of claims fixed by Interstate Commerce Commission to car-owning railroad did not violate due process. *In re Boston & Maine Corp.*, 634 F.2d 1359, 1365 (1st Cir. 1980). Bankruptcy courts must be able to proceed with an expeditious and orderly administration of the estate. Of course, the courts must act within the limits of due process, but "due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961). *See also In re Beverly Crest Convalescent Hospital*, 548 F.2d 817 (9th Cir. 1976) in which the bankruptcy judge's approval of a letter agreement without notice of a hearing was held not to be a denial of due process when the parties had attended all pertinent hearings. The Ninth Circuit found no violation of due process when the bankrupt, who was incarcerated but represented by counsel was not present at a hearing before a special master and a jury trial stating that "(t)here is no constitutional right for a litigant to be personally present during the trial of a civil proceeding" *Faucher v. Lopez*, 411 F.2d 992, 996 (9th Cir. 1969).

To be constitutional, the legislation must serve legitimate legislative purposes, and as long as it does so, the construction of the statute which permits the bankruptcy judge to disallow unliquidated and contingent claims resulting in what may be a perfectly valid claim not getting either a hearing or a dividend does not deny due process. *In re Cartridge Television, Inc.*, 535 F.2d 1388, 1392 (2nd Cir. 1976). Not permitting an appeal from Bankruptcy Court's remand of a foreclosure action to the state court does not violate due process, as "(n)o right to appellate review existed at common law, nor has it been considered a necessary element of due process." *Harlow v. Sargent*, 8 B.C.D. 162, 14 B.R. 267, 268 (D.Vt.1981). Nationwide service of process pursuant to B.R. 704 does not violate Fifth Amendment.

*In re Trim Lean Meat Products, Inc.*, 11 B.R. 1010, 1012 (D.Del.1981), *In re G. Weeks Securities, Inc.*, 5 B.R. 220, 226 (B.C.W.D. Tenn.1980).

██ Defendant argues that the standard for due process is the minimal contact test of *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The minimum contacts test, when applied to a state court's attempt to extend its jurisdiction and its state laws beyond its geographical boundaries, obviously supplies the needed elasticity to meet the due process stretching of the limitation normally associated with its writ. Due process requires that a defendant only be subject to a state court's in personam jurisdiction if served within its borders or under the long arm statute if certain minimum contacts with the state exist so that service of the writ does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington, supra* at 316, 66 S.Ct. at 158. The instant case, however, concerns the exercise of jurisdiction by a federal court based upon a federal statute and a duly promulgated rule. Congress, by accepting the Bankruptcy Rules, has specifically provided for nationwide service of process in B.R. 704:[3]

> (f) Territorial Limits of Effective Service.
>
> (1) The summons, together with the complaint and notice of trial or pre-trial conference, and all other process except a subpoena may be served anywhere within the United States. "United States," as used in this subdivision, includes the Commonwealth of Puerto Rico and the territories and possessions to which the Act is or may hereafter be applicable.

The "minimum contacts" test of *International Shoe* is not relevant when jurisdiction is based on a federal statute rather than diversity of citizenship. Where, by properly promulgated federal statutes or rules, De-

fendant may be served within the territorial boundaries of the United States, the minimal contacts are present that are required to justify a federal court's exercise of power. *Driver v. Helms*, 577 F.2d 147 (1st Cir. 1978) reversed on other grounds, *Stafford v. Briggs*, 444 U.S. 527, 100 S.Ct. 774, 63 L.Ed.2d 1 (1980); *Fitzsimmons v. Barton*, 589 F.2d 330 (7th Cir. 1979); *Mariash v. Morrill*, 496 F.2d 1138 (2d Cir. 1974); *In re Trim Lean Meat Products, Inc.*, 11 B.R. 1010 (D.Del.1981); *In re Whippany Paper Board Co., Inc.*, 4 C.B.C.2d 370 (B.C.N.J. 1981). Congress' power to provide for service of process anywhere within the United States has been recognized by the Supreme Court. *Mississippi Publishing Corp. v. Murphree*, 326 U.S. 438, 442, 66 S.Ct. 242, 244, 90 L.Ed. 185 (1946); *see also Stafford v. Briggs*, 444 U.S. 527, 554, 100 S.Ct. 774, 789, 63 L.Ed.2d 1 (Stewart, J. dissenting). Although in diversity cases, federal courts will only exercise jurisdiction within the territorial limits of the state in which the federal court sits, *see* F.R.C.P. 4(d)(1), (3), (7) and 4(e)(f), Congress can provide otherwise and under its bankruptcy power has deemed it appropriate to do so. The Bankruptcy Court's area of service includes the entire nation.

The necessity for service of process beyond district and state boundaries in bankruptcy proceedings was recognized by the Supreme Court in *Continental Illinois National Bank & Trust Co. v. Chicago R. I. & Pac. Ry.*, 294 U.S. 648, 684, 55 S.Ct. 595, 609, 79 L.Ed. 1110 (1935). Although the Court predicated its determination upon the Bankruptcy Court's jurisdiction of the Debtor's property "wherever located", the rationale for permitting extraterritorial service should also apply to the expanded language of § 1471. That rationale is to permit an orderly and expeditious administration of the Debtor's estate.

This objective is reflected not only in 28 U.S.C. § 1471, but throughout the Reform Act. For example, the venue provision, 28

---

**3.** Congress pursuant to 28 U.S.C. § 2075 authorized the Supreme Court to prescribe rules of procedure for the bankruptcy courts as well as other federal courts. Section 405(d) Title IV

Public Law 95–598 provides that the pre October 1, 1979 Rules will apply "to the extent not inconsistent" with the new Act. Nationwide service is not inconsistent.

U.S.C. § 1473 deals with proceedings arising under or related to cases under title 11:

(a) Except as provided in subsections (b) and (d) of this section, a proceeding arising in or related to a case under title 11 may be commenced in the bankruptcy court in which such case is pending.[4]

Another example of the necessary nationwide reach of the Bankruptcy Reform Act is 11 U.S.C. § 362, the automatic stay provision which reaches any entity anywhere in the United States[5] seeking to in any way effect the Debtor or the Debtor's property wherever located in the United States or its possessions. The pursuit of a suit in Rhode Island against the Debtor will be as much a violation of the automatic stay as a suit brought in Massachusetts. The Trustee may not be able to compel the Defendant to bring his claim into this Bankruptcy Court,[6] but the interest in the property of the Defendant is subject to this Court's jurisdiction and the Defendant is still subject to the automatic stay as to any action he may have started elsewhere. As a practical matter, failure to pursue the claim or participate in the Bankruptcy Court may result in a discharge of the judicial lien as well as the ultimate claim and non-participation in the distribution of the assets of the estate.

The Defendant points to the decision of another bankruptcy court in this District which held that the Massachusetts Long Arm Statute did not provide for personal jurisdiction of the Bankruptcy Court over an out-of-state defendant who transacted no business in Massachusetts. *In re G & O Building System*, Case No. 81–0333–JG, Adv. No. A81–0605 (slip opinion) (Gabriel, J.) (B.C.D.Mass. Nov. 4, 1981). That brief opinion discussed only the Massachusetts Long Arm Statute and none of the bankruptcy provisions. I suspect the Court responded to counsel's arguments which did not raise the bankruptcy jurisdiction provisions of the Reform Act. The opinion is accurate as to the interpretation of the Massachusetts Long Arm Statute, but since it did not consider the Bankruptcy provisions it is not relevant to the issue as decided by this Court. Likewise, all of the cases cited in the above opinion deal with the normal diversity requirements in the absence of any contrary specific Congressional enactment.

■ Procedural due process mandates that defendant receive proper notice and have opportunity to be heard. *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *see generally* Wright & Miller, *Federal Practice & Procedure* § 1074 (1969).

"The fundamental requisite of due process is the opportunity to be heard." *Grannis v. Ordean*, 234 U.S. 385, 394, 34 S.Ct. 779, 783, 58 L.Ed. 1363 (1914). The Supreme Court has defined procedural due process as a fundamental requirement of fairness requiring "not only the right to present evidence but also a reasonable opportunity to know the claims of the opposing party and to meet them." *Morgan v. United States*, 304 U.S. 1, 18, 58 S.Ct. 773, 776, 82 L.Ed.2d 1129 (1938).

■ The Supreme Court in *Mullane v. Central Hanover Bank & Trust Co.* set forth the notice requirement of due process.

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all circumstances, to apprise the interested parties of the pendency of the action and afford them an opportunity to present their objections . . . The notice must be of such a nature as reasonably to convey the required information . . . and it must

---

4. § 1473(b) deals with small claims and (d) deals with proceedings that arose after the filing. Thus, the venue contemplated is the court in which the case was originally filed regardless of the location of the defendant.

5. This was also true under the old Act. See *Bankruptcy Rules* 401 and 601.

6. When Congress intended a bankruptcy court other than the one in which the case was originally filed to have jurisdiction, it expressly said so. See 28 U.S.C. § 1478 which provides for removal ". . . to the bankruptcy court for the district where such court action is pending."

afford a reasonable time for those interested to make their appearance...." 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950).

In the instant proceeding, it is uncontroverted that Defendant received notice pursuant to Bankruptcy Rule 704, and that the Defendant has had an opportunity to be heard and, in fact, filed a brief and appeared specially to argue his motions.[7]

Further, any alleged unfairness that may result from requiring defendant to submit to the jurisdiction of an out-of-state bankruptcy court is recognized and provided for by 28 U.S.C. § 1475 which provides:

> A bankruptcy court may transfer a case under title 11 or a proceeding arising under or related to such a case to a bankruptcy court for another district, in the interest of justice and for the convenience of the parties.

 While venue is to be distinguished from jurisdiction, the Code is cognizant of the practical necessities. The Bankruptcy Court has the power to retain a case even when venue is improper, 28 U.S.C. § 1477, or to transfer it as required, all as in its discretion, "in the interest of justice and for the convenience of the parties." The Congressional intent was to create a flexible system in which the judge could balance the needs and equities. See H.Rep.No.95–595, 95th Cong., 1st Sess. 51–56, 475 (1977). The jurisdiction and venue provisions of the Bankruptcy Reform Act are designed to be broad to meet the needs of bankruptcy and the equities of the case. They meet a proper legislative purpose and do not exceed the requirements of due process.

Defendant's Motion to Dismiss is denied.

The defendants were given to November 30th to answer, and trial was set for December 9th.

At the hearing on December 9, 1981, the parties stipulated in accordance with 11 U.S.C. § 547(b), the preference section, that Worrall was and is a creditor for whose

benefit the attachment was made and that it was for an antecedent debt made while the Debtor was insolvent within 90 days before the date of the filing of the bankruptcy petition and that the attachment, if allowed to ripen into a judgment, would enable this creditor to receive more than such creditor would receive in Chapter 7 had the transfer not been made. In a separate proceeding by the Debtor against Graham Glass, Inc., a stipulation has been filed proposing to settle a claim of the Debtor of $86,000 for $75,000 which would include the $10,000 under attachment to be held by the Trustee pending final disposition of this proceeding.

That a judicial lien or attachment is a transfer within the expansive definition of 11 U.S.C. § 101(40) has previously been treated within this memorandum. *See Suppa v. Capalbo*, 8 B.R. 720 (B.Ct.D.R.I.1981).

The attachment is void as a preference and an Order shall so issue.

---

7. Counsel subsequently filed an answer and appeared at the hearing on the merits continu-

ing to object to jurisdiction.