In re The NATIONAL SUGAR REFIN-
ING COMPANY, Debtor.

The NATIONAL SUGAR REFINING
COMPANY and Bankers Trust
Company, Plaintiffs,

v.

LENTZ MILLING COMPANY,
Defendant.

Bankruptcy No. 81 B 11756 (EJR).
Adv. No. 82–5455–A.

United States Bankruptcy Court,
S.D. New York.

Dec. 15, 1982.

See also, Bkrtcy., 23 B.R. 726.

Wessel & Carpel, Philadelphia, Pa., for defendant.

Finley, Kumble, Wagner, Heine, Underberg & Casey, New York City, for plaintiff/debtor Nat. Sugar Refining Co.

Moses & Singer, New York City, for defendant Bankers Trust Co.

## DECISION ON MOTION BY LENTZ MILLING COMPANY TO DISMISS COMPLAINT AND/OR CHANGE VENUE

EDWARD J. RYAN, Bankruptcy Judge.

On March 23, 1982, the debtor in possession, National Sugar Refining Company ("National") and its lender, co-plaintiff Bankers Trust Company (the "Bank"), jointly filed a summons and complaint against defendant, Lentz Milling Company ("Lentz"). The complaint seeks the assumption of an executory contract; damages relating to the breach of that contract; the rejection of another executory contract; and damages for pallets which are allegedly owned by the debtor, liened to the Bank and in the possession of Lentz.

Lentz seeks an order dismissing the complaint for failure to state a cause of action upon which relief may be granted, or, in the alternative, an order transferring venue to the United States Bankruptcy Court for the Eastern District of Pennsylvania. For the reasons set forth below both motions are denied.

In October, 1980, National, a company engaged in the business of processing and marketing sugar products, entered into National Contract No. 3367 ("Contract 3367") with Lentz, Lentz thereby agreeing to order and accept delivery of 45,000 hundredweight of sugar at $50 per hundredweight. National and Lentz also entered into National Contract No. 4297 ("Contract 4297"), National thereby agreeing to deliver 10,000 hundredweight of sugar at $22 per hundredweight. Contract 3367, as modified in August, 1981, called for the completion of delivery and payment through January 7, 1982. Contract 4297 called for completion of delivery by December, 1981.

On September 3, 1981 (the "filing date"), National filed its petition for reorganization under Chapter 11 of the Bankruptcy Code. Thereafter, National was continued in operation and control of its business as debtor in possession.

At the filing date neither contract had been fully performed. Lentz failed to make further orders or accept delivery pursuant to the terms of Contract 3367, instead filling its needs by purchasing sugar on the spot market. Likewise, National failed to make any further delivery pursuant to the terms of Contract 4297. Due to current market conditions, performance of Contract 4297 would result in a loss for National, while performance of Contract 3367 would result in a profit. Plaintiffs contend that defendant's failure to accept delivery of sugar at $50 per hundredweight constitutes a repudiation of Contract 3367 and, therefore, gives rise to an action for damages.

On March 23, 1982, National and the Bank, as a party whose loans of $23 million are secured by a security interest in and upon personal property of National, including National's contract rights, commenced an adversary proceeding against Lentz, seeking an order: (1) authorizing National to assume Contract 3367; (2) granting judgment to National in the amount of $28,262.08 plus interest thereon for carrying charges and energy costs due and owing National by Lentz, pursuant to the terms of Contract 3367; (3) granting judgment for National's lost profits arising from Lentz' alleged repudiation of Contract 3367; (4) authorizing National to reject Contract 4297; and (5) granting judgment in the amount of $2,190 plus interest thereon for the value of pallets belonging to National which were retained in the possession of Lentz.

Defendant argues first, that the Bank is not a proper party to this adversary pro-

ceeding, since only the debtor may seek to accept or reject executory contracts; second, that National may not assume Contract 3367, since such assumption would benefit only the Bank and not the debtor's estate; third, that as to judgment for the value of National's pallets retained by Lentz, the Bank must first either seek relief from the automatic stay pursuant to 11 U.S.C. § 362(d) or seek abandonment pursuant to 11 U.S.C. § 554 and thereafter replevy the pallets; and fourth, that since the Bank's interest is secured by the pallets, National has no interest in them and, therefore, has no standing, as debtor, to seek damages.

At the outset, it should be noted that the defendant does not challenge National's right to reject Contract 4297 as unprofitable.

■ While it is true that it is for the debtor in possession to request the court's approval of assumption of an executory contract, pursuant to 11 U.S.C. §§ 365(a) and 1107, the debtor in possession, as co-plaintiff, is, in fact, making such a request. The statutory requirement that the debtor in possession seek the relief, once satisfied, is not undone by a creditor's participation in an adversary proceeding.

■ Defendant correctly argues that no contract may be assumed which does not benefit the debtor's estate. 2 *Collier on Bankruptcy* ¶ 365.03 (15th ed. 1981). Although the Bank's loans to National are secured, in part, by the profits accruing to National on its contracts, the assumption of a profitable contract, insofar as it reduces the Bank's outstanding claims against the estate does indeed benefit the estate. *See, In re Lewis Carpet Mills, Inc.,* 15 B.R. 172 (N.D.Ga.1981). National, therefore, does have standing to seek the assumption of Contract 3367.

■ While a secured party seeking recovery against assets of the estate must first seek relief from the automatic stay, pursuant to 11 U.S.C. § 362(d), in the instant case, the debtor in possession is suing for recovery against a third party. As an in-

terested party, the Bank is free to join in the proceedings as a co-plaintiff. *See, In re Lewis Carpet Mills, Inc., supra,* 15 B.R. 172 (N.D.Ga.1981).

■ Although the Bank's loans to National are secured in part by the pallets, insofar as recovery of damages thereon reduces the Bank's outstanding claims against the estate, the debtor has an interest in the proceeding, and is therefore a proper party plaintiff with respect to the action for recovery on the pallets.

Both plaintiffs have standing in this proceeding. We come now to the defendant's alternative request for an order transferring venue.

■ Defendant correctly asserts that a transfer of venue is appropriate where such transfer is in the interests of justice and for the convenience of the parties, pursuant to 28 U.S.C. § 1475 and Bankruptcy Rule 782. Transfer, however, is granted cautiously and the burden of establishing that transfer is appropriate is on the defendant. *Factors Etc., Inc. v. Pro Ants, Inc.,* 579 F.2d 215 (2d Cir.1978), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979).

■ Defendant, largely by way of unsupported allegations, argues that the case should be heard in the Eastern District of Pennsylvania because the disputed contracts were entered into there; the signatories are there; the law of Pennsylvania will govern; performance was to be there; National has its refinery there; and the witnesses necessary for the presentation of defendant's case are located in the Philadelphia area and are not subject to the compulsory process of this court.

These allegations are not, in themselves, sufficient to overcome the plaintiffs' choice of forum.

First, there is a general preference to try all matters involving bankruptcy in the court in which the bankruptcy is pending. *Matter of Trim-Lean Meat Products, Inc.,* 11 B.R. 1010 (D.Del.1981).

■ Second, it has been held that "the most important consideration is whether

transfer would promote the economic and efficient administration of the estate." *In re Commonwealth Oil Refining Co., Inc.,* 596 F.2d 1239 (5th Cir.1979), *aff'g,* 17 C.B.C. 715 (W.D.Texas 1978). The presentation of plaintiffs' case in Pennsylvania, with attendant expenses, surely cannot be said to promote this important objective. Third, the transfer must be made for the convenience of both parties, not merely to convenience one side at the expense of the other. *Matter of Northern Pipeline Const.,* 6 B.R. 928 (D.Minn.1980).

Fourth, there has been no suggestion that the hearing of this case in New York would in any way impair the interests of the State of Pennsylvania, or that the New York courts will have difficulty in discerning and applying the applicable laws of Pennsylvania.

Last, aside from the question of compulsory process, which seems inapplicable to any witnesses which the defense might call on its behalf, a party seeking a transfer on account of the convenience of the witnesses must "clearly specify the key witnesses called." *Vassallo v. Niedermeyer,* 495 F.Supp. 757 (S.D.N.Y.1980) (quoting *Factors Etc., Inc., supra,* 579 F.2d at 218). Defendant has not met this test of particularity.

On a motion to dismiss, all reasonable inferences must be made on behalf of the party opposing the motion. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Budco v. The Big Fights, Inc.,* 594 F.2d 900 (2d Cir.1979).

We are therefore compelled, on the record before us and for the reasons set forth above, to grant the plaintiffs an evidentiary hearing on the claims set forth in their complaint.

Defendant's motion to dismiss and to change venue is, therefore, denied.

Settle an appropriate order.