**In re The BEARE COMPANY, Debtor.**

**Bankruptcy No. 93–12462–GHB.**

United States Bankruptcy Court,
W.D. Tennessee,
Eastern Division.

May 13, 1994.

Robert A. Udelsohn, Udelsohn, Blaylock & Marlow, Memphis, TN, for debtor.

Lawrence R. Ahern, III, Bass, Berry & Sims, Nashville, TN, for First American Nat. Bank.

Jimmy L. Croom, Atty., Office of U.S. Trustee, Memphis, TN.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW RE DEBTOR'S MOTION FOR APPROVAL OF ASSUMPTION OF EXECUTORY CONTRACTS

G. HARVEY BOSWELL, Bankruptcy Judge.

This matter is before the court on a Motion for Approval of Assumption of Executory Contracts filed by the Debtor, The Beare Company. After thoroughly reviewing the documents presented to the court and considering the testimony given by witnesses, as well as the record as a whole, this court approves the Debtor's assumption of executory contracts under 11 U.S.C. § 365. Pursuant to Rule 7052 F.R.Bankr.P., the court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

The Beare Company and American Cold Storage—Jackson, L.P. ("ACS") entered into a series of agreements, hiring ACS to manage the Beare Company at a cost of $5000 per month plus expenses, and granting ACS the option to purchase the assets of the Debtor. The initial Management Agreement and Option to Purchase was executed on February 17, 1991. At that time, full disclosure of the agreement was made to First American National Bank. First American consented to the Debtor entering into this agreement. Under the terms of the agreement, the debts of the Beare Company owing to First American National Bank and other creditors must be satisfied in order for ACS to acquire valid title thereto.

On November 1, 1991 the initial agreement was modified and extended through the end of 1992. Once again, on December 18, 1992, the initial agreement was modified and extended for another year. The Beare Company filed for relief under Chapter 11 of the Bankruptcy Code on November 26, 1993. On January 28, 1994, the initial Management Agreement and Option to Purchase was amended. The amendment states:

> The purpose of this amendment is to extend the Management Agreement and Option to Purchase, to change the purchase price to be paid in the event the option to purchase is exercised and to agree on certain other conditions and agreements, all as are hereinafter more particularly set out.

Exhibit "N" to the Motion for Approval of Assumption of Executory Contracts, p. 1.

The Debtor filed the present Motion for Approval of Assumption of Executory Contracts under 11 U.S.C. § 365 on April 18, 1994. In the alternative, the Debtor requested that the court authorize the employment of ACS under 11 U.S.C. § 327. First American National Bank filed an objection to Debtor's motion, stating that the contract to be assumed is, in reality, a post-petition agreement to retain professionals that needs to be approved by the court pursuant to 11 U.S.C. § 327. First National contends that this contract could not be approved under 11 U.S.C. § 327 or 11 U.S.C. § 365. The United States Trustee also filed an objection to the Debtor's motion on the same grounds. A hearing on the Debtor's motion was held before the court on May 6, 1994.

## CONCLUSIONS OF LAW

■ The issue before the court is whether the Management Agreement and Option to Purchase may be assumed by the debtor-in-possession. The Court finds that the Management Agreement is not severable from the Option to Purchase for purposes of assumption under 11 U.S.C. § 365 and that 11 U.S.C. § 327, concerning the employment of professionals, does not even apply in this situation.

■ The contract in question must be assumed as a whole or rejected as a whole. *In re Caravansary, Inc.,* 67 B.R. 469 (9th Cir. BAP 1986); *Richmond Leasing Co. v. Capital Bank,* 762 F.2d 1303, 1311 (5th Cir. 1985). When a contract is assumed in bankruptcy, it is accompanied by all of its provisions, and it cannot be assumed in part and rejected in part. *In re Nitec Paper Corp.,* 43 B.R. 492, 498 (S.D.N.Y.1984). If a debtor-in-possession assumes a contract, he receives both the benefits and the burdens of that contract. *In re Bildisco and Bildisco,* 465 U.S. 513, 531, 104 S.Ct. 1188, 1199, 79 L.Ed.2d 482 (1984); *see also, In re Italian Cook Oil Corp.,* 190 F.2d 994, 996 (3rd Cir. 1951); *In re Ralston,* 401 F.2d 293 (6th Cir.1968).

■ Furthermore, severability of a contract is determined by the intent of the parties, as evidenced by the contract itself. *Penske Truck Leasing Co., L.P. v. Huddleston,* 795 S.W.2d 669, 671 (Tenn.1990); *Brockett v. Pipkin,* 25 Tenn.App. 1, 149 S.W.2d 478 (1940). In paragraph one of the Management Agreement and Option to Purchase the parties state, "[t]he Partnership will take over, effective this date, and completely manage the cold storage warehouse business . . . and *simultaneously, and for the same consideration,* Beare grants an option to the Partnership to purchase substantially all of the business assets of Beare's cold storage warehouse business. . . . Exhibit "B" to the Motion for Approval of Assump-

tion of Executory Contracts, p. 1 (emphasis added). The terms of the contract therefore indicate that the parties intended that this contract not be severable. Further support for this proposition comes from the testimony in court of Mr. Bradshaw, Chairman of the Board and Chief Executive Officer of American Cold Storage of Tennessee, General Partner of ACS. Mr. Bradshaw testified that ACS would not have entered into the Management Agreement with the Debtor but for the Option to Purchase, because a $5000 per month payment for management services was much lower than the amount which would usually be charged for such services. It appears that the parties did intend for the Management Agreement and Option to Purchase to be one inseparable contract.

The debtor-in-possession has the ability to assume this executory contract under 11 U.S.C. § 365(a) because of the power given to it by Congress by way of 11 U.S.C. § 1107(a), which provides, in pertinent part:

Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights ... and powers, and shall perform all the functions and duties ... of a trustee serving in a case under this chapter.

■ In the present situation, the debtor in possession may properly assume the Management Agreement and Option to Purchase. In order for it to be assumed, an executory contract must benefit a debtor's bankruptcy estate, see *In re National Sugar Refining Co.*, 26 B.R. 762, 764 (Bankr.S.D.N.Y.1982); 2 Collier on Bankruptcy ¶ 365.03 (15th ed. 1991), and the assumption of the contract must be an exercise of "reasonable business judgment," *In re Global Int'l Airways*, 35 B.R. 881, 888 (Bankr.W.D.Mo.1983). The evidence submitted to this court clearly indicates that the assumption of this contract will certainly benefit the debtor's bankruptcy estate and that the reasonable business judgment standard will be met. Since ACS has been managing The Beare Company, the debtor has made the required monthly payments to First American National Bank, maintained current payments to its other creditors, paid all taxes due and owing, decreased its general and administrative expenses, and substantially increased its cash collateral and accounts receivable. There should be no doubt that ACS' services have benefitted the debtor's bankruptcy estate or that the "reasonable business judgment" requirement has been satisfied.

■ Although the debtor is attempting to assume the Management Agreement and Option to Purchase, as well as the modifications and the amended contract (which was amended post-petition on January 28, 1994), this fact will not adversely affect the debtor's ability to assume this executory contract. The United States Court of Appeals for the Fifth Circuit addressed this issue in *Richmond Leasing Co. v. Capital Bank, N.A.*, supra. In *Richmond* the Fifth Circuit Court of Appeals stated:

[T]o the extent that the amended lease represents a true renegotiation of the obligations of RLC, RTC and GECC, it falls entirely outside of § 365's concern. 11 U.S.C. §§ 1107 and 1108, taken together, authorize a debtor in possession to operate the business of the debtor. Nothing in the Code suggests that the debtor may not modify its contracts when all parties to the contract consent. Although § 1107 provides that a court may limit the debtor's exercise of the rights of the trustee, including the § 1108 right to operate the business, in the absence of special circumstances or a specific Code provision, we see no reason to require the debtor to do more than justify its actions under the "business judgment" standard if creditors object.

762 F.2d at 1311.

As was previously noted, the debtor in this case has adequately justified its actions under the "business judgment" standard.

■ For the foregoing reasons, this court authorizes the debtor to assume the executory contract in question, however, the court reserves the right to review the provision of the Management Agreement and Option to Purchase which concerns the payment of certain out-of-pocket expenses. The debtor in possession shall list these expenses in a separate, detailed section of its monthly operating

report to be submitted to the U.S. Trustee's Office, in order to give interested parties the opportunity to object to the payment of such expenses.