**WINDSOR COMMUNICATIONS GROUP INC., t/a Norcross-Rust Craft Greeting Card Publishers**

v.

**Joseph GRANT.**

**Misc. No. 84–0782.**

United States District Court,
E.D. Pennsylvania.

June 19, 1985.

Nancy V. Alquist and Howard M. Holmes of Clark, Ladner, Fortenbaugh and Young, Philadelphia, Pa., for Windsor Communications Group.

## MEMORANDUM/ORDER

LOUIS H. POLLAK, District Judge.

Pending in this court is plaintiff's motion for entry of a default judgment. The motion was originally presented to Bankruptcy Judge William A. King, Jr. who recommended that judgment be entered in accordance with plaintiff's findings of fact and conclusions of law. The motion was then referred to this court for a final determination pursuant to 28 U.S.C. § 157(c)(1). That provision establishes that a Bankruptcy Judge may not enter a final judgment in a "non-core" proceeding as defined by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353 (1984). Judgment in such non-core proceedings may only be entered by the district court although that court considers the proposed findings and conclusions of the Bankruptcy Judge who has heard the proceeding.

At the commencement of this proceeding, service of the complaint and summons was effected by first class mail pursuant to Bankruptcy Rule 7004. No acknowledgment of service by the defendant was filed because none is required by that rule. However, in this court, service of a summons and complaint generally requires compliance with Federal Rule of Civil Procedure 4 which calls for written acknowledgment of service when the service is made solely by first class mail. Accordingly, I remanded this matter to Judge King for consideration of whether service in accordance with Bankruptcy Rule 7004 was sufficient.

Judge King has since filed an exhaustive and well-reasoned report on this question.[*] The report considers the history of service provisions in the statutes and rules governing bankruptcy and related proceedings prior to the enactment of the Bankruptcy Amendments and Federal Judgeship Act of 1984. In light of that history and the intent of Congress in drafting the Amendments, Judge King concludes that the Bankruptcy Rule provisions regarding service of process should apply in both core and non-core proceedings under the bankruptcy statutes.

As is apparent from Judge King's report, the issue of which set of procedural rules should apply to non-core proceedings is a difficult one on which the statutes and rules fail to provide a clear answer. Adjudication of such a complex and important issue is usually aided by the development of the question by the parties whose opposing interests lead them to develop fully the arguments on both sides of the issue. The procedural posture of the present case, however, does not allow for such adversarial testing of arguments and counter-arguments.

The immediate question to be resolved is whether this court has *in personam* juris-

---

[*] A copy of Judge King's report is annexed to this Memorandum/Order.

diction over defendant nonwithstanding that service of process, accomplished in compliance with Bankruptcy Rule 7004, has not been acknowledged in the manner called for by Rule 4 of the Federal Rules of Civil Procedure. On the basis of Judge King's thoughtful report, *see also In re Martin-Trigona*, 763 F.2d 503 (2d Cir.1985) (first class mail service under Rule 7004 is effective after the *Northern Pipeline* decision); *Foreman Industries, Inc. v. General Motors Corp.*, 34 B.R. 712, 720 (S.D.Ohio 1983), I am satisfied that the record before me affirmatively supports a determination that this court has jurisdiction over defendant. I am, accordingly, prepared to enter a default judgment against the defendant. But because, owing to defendant's absence from this litigation, there has been no development of the arguments which might be marshalled by defendant against a finding of jurisdiction, entry of the default judgment is without prejudice to defendant's attempting, in some later phase of this litigation or its sequelae, to assert a challenge to this court's current exercise of *in personam* jurisdiction.

Accordingly, it is hereby ORDERED that the recommendation of Judge King that default judgment be entered is APPROVED AND ADOPTED. Plaintiff's motion for entry of default judgment is GRANTED and judgment is ENTERED for plaintiff and against defendant in the amount of $2,195.55.

REPORT OF THE HONORABLE WILLIAM A. KING, JR., UNITED STATES BANKRUPTCY JUDGE TO THE HONORABLE LOUIS H. POLLAK, UNITED STATES DISTRICT COURT JUDGE

March 1, 1985

This Report is intended to address the question of bankruptcy procedure posed by

your Honorable Court to the undersigned Bankruptcy Judge in a Memorandum/Order of November 5, 1984. The matter is before Your Honor as a result of our submission of proposed findings of fact and conclusions of law recommending entry of default judgment in "non-core" bankruptcy matters to the District Court in accordance with 28 U.S.C. § 157(c)(1) (1984).

Your Honor questions whether the District Court may enter default judgment in a "non-core" bankruptcy proceeding where service of process was effectuated in a manner authorized by Bankruptcy Rule 7004(b), but not authorized by Rule 4(c) of the Federal Rules of Civil Procedure.[1] Your Honor remanded five (5) adversary proceedings, including the one captioned above, to the Bankruptcy Court in order that the undersigned Bankruptcy Judge may address this question.

Although Your Honor's question is specifically directed toward the applicability of Bankruptcy Rule 7004 to "non-core" matters, we have found it necessary to discuss the applicability of the Bankruptcy Rules in general to "non-core" matters in light of the creation of a new bankruptcy court system under the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("BAFJA").[2]

BAFJA was enacted to correct the jurisdictional defects of the Bankruptcy Reform Act of 1978 ("BRA") illuminated by the Supreme Court in *Northern Pipeline*.[3] Rather than reconstitute the bankruptcy courts as Article III courts and preserve the system set up by the BRA, Congress chose to create a two-tiered court system that is similar to but not totally analogous to the summary/plenary jurisdictional distinction under the Bankruptcy Act of 1898. Under current law, bankruptcy judges may *hear and decide* "core" bankruptcy matters under 28 U.S.C. § 157(b)(1) (1984), but

---

1. Fed.R.Civ.P. 4(c) requires that an official acknowledgement form accompany the complaint and be returned to the sender within twenty (20) days after the date of mailing in order for that form of service to be valid. Bankruptcy Rule 7004(b) varies from Rule 4(c) in that it does not require that an acknowledgement form accompany a complaint served by mail.

2. Pub.L. No. 98–353 (July 10, 1984).

3. *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

may only *hear* "non-core" bankruptcy matters under 28 U.S.C. § 157(c)(1) (1984). In "non-core" proceedings, the bankruptcy judge must submit proposed findings of fact and conclusions of law to the district court for entry of final judgment.

The Bankruptcy Rules were promulgated to procedurally implement the substantive law of the BRA,[4] part of which was repealed by BAFJA. A few of the Bankruptcy Rules were revised after BAFJA. However, the Rules governing the scope of the Bankruptcy Rules (Rules 1001 and 9001(2)) were not brought into line with the new court terminology used in BAFJA, probably due to legislative oversight.[5] As a consequence, we must indulge in some guesswork to determine whether it is appropriate to apply the Bankruptcy Rules to "non-core" proceedings.

Because some of the terminology of the Bankruptcy Rules fails to mesh properly with the statutory language of BAFJA, a technical argument can be made that the Bankruptcy Rules should not govern proceedings in the District Court after BAFJA. The end result of this argument, of course, is that the method of service utilized in the five (5) proceedings pending before Your Court would have to be declared invalid in retrospect because service was not authorized by Fed.R.Civ.P. 4(c). To apply BAFJA retroactively to invalidate the form of service used in these proceedings would be prejudicial to the plaintiff since the plaintiff had no way of knowing at the time service was made that the Bankruptcy Rules were not applicable. It would further appear to be contrary to the intent of Congress as our analysis will attempt to show.

While the appropriate answer to the question posed is ultimately for Your Honor to decide, we think a more compelling argument can be made in favor of uphold-ing the mode of service utilized here, particularly since these proceedings were pending prior to the enactment of BAFJA. In summary, we cannot provide a definitive answer to the question raised, but we have taken a position in favor of upholding the mode of service utilized in the five (5) proceedings pending before Your Honor.

Although Your Honor has not specifically raised a due process question regarding the constitutional validity of Bankruptcy Rule 7004(b), we believe that this issue warrants discussion. Before entering default judgment, the District Court must posit valid jurisdiction over the defendant and must implicitly endorse the method of service used. Therefore, we have included within our Report information regarding the origin of Bankruptcy Rule 7004 and how it is intended to meet minimum procedural due process requirements.

A review of the procedural background of these proceedings follows in order to establish a framework for analysis.

## I.  *The Procedural Background*

Windsor Communications Group, Inc. t/a Norcross-Rust Craft Greeting Card Publishers ("Windsor" or "debtor") is the debtor in a case under title 11 of the United States Code (also referred to as "Bankruptcy Code" or "Code") which has been pending before the Bankruptcy Court of the Eastern District of Pennsylvania since August, 1982.[6]

During the course of its pending bankruptcy case, Windsor has instituted approximately 1,500 adversary proceedings, including the instant proceeding, in the Bankruptcy Court, pursuant to Bankruptcy Rule 7001. In each action, Windsor seeks to collect monies alleged to be due and owing to the estate from the respective defendants. The five (5) proceedings pending be-

---

**4.** The "Bankruptcy Rules" were promulgated by Order of the Supreme Court on April 25, 1983, and became effective on August 1, 1983, superseding the "Rules of Bankruptcy Procedure" which governed practice prior thereto. *See* 28 U.S.C. § 2075 (1976).

**5.** *See* discussion *infra* pp. 723–24.

**6.** The terms "case" and "proceeding" are not used synonymously. A case is commenced under title 11 of the United States Code by the filing of a bankruptcy petition. A proceeding arises under, arises in, or may be related to a case under title 11. *See* 28 U.S.C. § 1334(a) and (b) (1984).

fore Your Honor were commenced by the filing of a Complaint entitled either "Debtor's Complaint for Turnover of Property (Accounts Receivable) or "Debtor's Complaint for Money Judgment or in the Alternative, Turnover of Property".

Four (4) of the five (5) adversary complaints were filed between March and April of 1984. The other action was originally commenced in December, 1982, and an amended Complaint was filed in April, 1983. Thus, all of the Complaints were filed and served after the Emergency Rule became effective[7] but before the effective date of BAFJA.

In view of the change in bankruptcy jurisdiction during the pendency of these matters, and because the dates of commencement and service of these proceedings may determine the law which is to be applied, we have highlighted the relevant procedural dates below:

1. *Windsor v. William Brooks, d/b/a Metro Department Store Inc.,* ("Windsor v. Brooks"), Bankruptcy Court Adversary No. 82–3738/District Court Misc. No. 84–0718:

   Complaint Filed on December 23, 1982
   Amended Complaint Filed on April 19, 1983
   Amended Complaint Served on April 22, 1983, upon Defendant located in New York.

2. *Windsor v. Edwin Tustins, d/b/a Tustins Gift Shop* ("Windsor v. Tustins"), Bankruptcy Court Adversary No. 84–0185/District Court Misc. No. 84–0849:

   Complaint Filed on March 5, 1984

Complaint Served on March 8, 1984, upon Defendant located in Pennsylvania

3. *Windsor v. The Gift Box,* Bankruptcy Court Adversary No. 84–0296/District Court Misc. No. 84–0765:

   Complaint Filed on March 28, 1984
   Complaint Served on April 17, 1984, upon Defendant located in New York

4. *Windsor v. The Sandpiper,* Bankruptcy Court Adversary No. 84–0395/District Court Misc. No. 84–0803:

   Complaint Filed on March 30, 1984
   Complaint Served on April 4, 1984, upon Defendant located in New Jersey

5. *Windsor v. Joseph Grant,* Bankruptcy Court Adversary No. 84–0502/District Court Misc. No. 84–0782:

   Complaint Filed on April 2, 1984
   Complaint Served on April 10, 1984, upon Defendant located in Florida

Upon the filing of each Complaint, a Summons and Notice of Trial was issued by the Clerk of the Bankruptcy Court. Each Summons and Notice of Trial designated a trial date and a date by which an Answer or other responsive pleading was required to be filed and served.

Service in four (4) of the proceedings was made in accordance with Bankruptcy Rule 7004(b), which became effective on August 1, 1983. Service in *Windsor v. Brooks,* however, was made in accordance with Rule 704(c) of the predecessor Rules of Bankruptcy Procedure, which were in effect at the time of service of the Complaint in that case.[8]

---

**7.** *See* Interim Rule for the administration of the bankruptcy court system adopted by the United States District Court for the Eastern District of Pennsylvania on December 25, 1982, as amended on December 29, 1982 ("Emergency Rule"). The Emergency Rule was designed to continue in effect until Congress enacted appropriate remedial legislation in response to the decision of the Supreme Court in *Northern Pipeline.* It became operative on December 25, 1982 and presumably lapsed on July 10, 1984 upon the enactment of BAFJA. Its validity as a constitutional jurisdictional model was upheld by the Third Circuit Court of Appeal in *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.,* 709 F.2d 190 (3d Cir.), *cert. denied,* 464 U.S. 938, 104 S.Ct. 349, 78

L.Ed.2d 315 (1983) (upholding constitutionality of identical Emergency Rule in New Jersey).

**8.** Although promulgated under the 1898 Act, the Rules of Bankruptcy Procedure remained in effect under BRA, to the extent not inconsistent, until the new Bankruptcy Rules were adopted. *See* Pub.L. No. 95–598 title IV, § 405(d) (repealed July 10, 1984). *See also In re Trim-Lean Meat Products, Inc.,* 11 B.R. 1010 (D.Del.1981). Although the Memorandum/Order reflects that service in *Windsor v. Brooks* was made under Bankruptcy Rule 7004(b), service was actually made under Rule 704(c) of the former Rules of Bankruptcy Procedure. This may be a distinction without a difference for the purposes of our discussion, however, since the method of service

In all five (5) proceedings, the service made by Windsor consisted of sending a copy of the Complaint and Summons and Notice of Trial to the defendant, by first-class mail. No form requesting that the defendant acknowledge receipt of service was forwarded with the Complaint, nor was a return receipt requested from the postal service, since no such acknowledgment or other indicia of receipt is required by Bankruptcy Rule 7004(b),[9] or by prior Rule 704(c).

None of the defendants filed Answers or responded to the Complaint. In addition, none of the service mailings were returned to the debtor by the postal service for inability to deliver to the defendant/addressee at the indicated address.

None of the defendants appeared before the Bankruptcy Court on the date scheduled for trial, although notice of the trial date was provided in the Summons and Notice thereof.

Following the trial date and the failure of each defendant to appear for trial, Windsor filed a motion for certification to the District Court of proposed findings of fact, conclusions of law and a proposed order entering judgment by default in favor of Windsor. ("Default Motion"). Upon filing, a date for hearing of each Default Motion was set and the Bankruptcy Clerk issued an Order for Hearing on Motion and Notice.[10] The debtor then served copies of the Default Motion and of the Order or Hearing on Motion and Notice upon each of the defendants in the same fashion as the Complaints were served.

None of the defendants answered or otherwise responded to the Default Motion and Order for Hearing on Motion and Notice, and none of the service envelopes returned to the debtor by the postal service. The Default Motions were filed and served, and the hearings were conducted, on the following dates: [11]

1. *Windsor v. Brooks*

   Default Motion Filed August 13, 1984

   Default Motion Served August 22, 1984

   Hearing Conducted September 27, 1984

2. *Windsor v. Tustins*

   Default Motion Filed May 4, 1984

   Default Motion Served May 23, 1984

   Hearing Conducted October 23, 1984

3. *Windsor v. The Gift Box*

   Default Motion Filed June 18, 1984

   Default Motion Served June 21, 1984

   Hearing Conducted August 2, 1984

4. *Windsor v. The Sandpiper*

   Default Motion Filed June 6, 1984

---

endorsed by and carried out under the two rules is identical (first class mail with no requirement for an acknowledgment of receipt or alternative mode of service).

**9.** Bankruptcy Rule 7004 provides in pertinent part:

> (b) SERVICE BY FIRST CLASS MAIL. In addition to the methods of service authorized by Rule 4(d) F.R.Civ.P., service may be made within the United States by first class mail postage prepaid as follows:
>
> (1) Upon an individual other than an infant or incompetent, by mailing a copy of the summons and complaint to his dwelling house or usual place of abode or to the place where he regularly conducts his business or profession.
>
> *   *   *   *   *   *
>
> (3) Upon a domestic or foreign corporation or upon a partnership or other unincorporated association, by mailing a copy of the summons and complaint to the attention of an officer, a managing or general agent, or to

any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant.

*   *   *   *   *   *

**10.** Since all five (5) Default Motions were filed on or after May 4, 1984, the motion practice in each action complied with the District Court's rulings in *Newton Savings Association v. Stinson,* No. 83–5291 (E.D.Pa. Feb. 6, 1984), and *Home Unity Savings and Loan Association v. Devlin,* No. 83–5284 (E.D.Pa. Dec. 15, 1983). An Order was entered in each case affirmatively directing the defendant to respond to the Motion, and a hearing on the Motion was held, upon notice to the parties.

**11.** All of the default hearings were conducted *after* the effective date of BAFJA. Filing and service of the Default Motions took place *before* BAFJA's effective date, (except in the *Windsor v. Brooks* action, where the Default Motion was filed and served post-BAFJA).

Default Motion Served June 12, 1984
Hearing Conducted August 16, 1984

5. *Windsor v. Joseph Grant*
Default Motion Filed June 22, 1984
Default Motion Served June 25, 1984
Hearing Conducted August 21, 1984

None of the defendants appeared at the default hearings. The debtor appeared at each hearing and presented evidence regarding the amount of the outstanding obligation.

We entered Orders certifying proposed findings of fact and conclusions of law to the District Court and recommending entry of default judgment in each of the proceedings on the following dates: [12]

1. *Windsor v. Brooks*
Certification Order signed September 27, 1984 [13]

2. *Windsor v. Tustins*
Certification Order signed November 1, 1984

3. *Windsor v. The Gift Box*
Certification Order signed October 16, 1984

4. *Windsor v. The Sandpiper*
Certification Order signed October 16, 1984

5. *Windsor v. Joseph Gra:*
Certification Order signed October 16, 1984

We certified each of these matters to the District Court because of our determination that the issues underlying the Complaints constituted "non-core" proceedings. Pursuant to 28 U.S.C. § 157(b)(3) (1984), the bankruptcy judge is required to make a threshold determination as to whether a proceeding is a core proceeding or a proceeding that is "otherwise related to" a case under title 11.[14]

█ Certain types of proceedings can easily be identified as "core" proceedings.[15]

---

**12.** All of the Orders of Certification were entered after the effective date of BAFJA.

**13.** In four of the five Orders of Certification, we made this finding expressly: "[I]n accordance with Section 157(*c*)(*1*) of Title 28, said matter is certified to the District Court for review...." The Order of Certification in *Windsor v. Brooks* inconsistently reflects that the matter was submitted "in accordance with ...the Interim Rule." The Emergency Rule had become obsolete by September 27, 1984, when the *Brooks* matter was certified, however, and BAFJA was then in effect. Your Honor noted the inconsistency, and treated the matter as if certified under § 157(c)(1)(1984). *See* Memorandum/Order in *Windsor v. Brooks* at 2.

**14.** The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11. A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law. 28 U.S.C. § 157(b)(3).

**15.** The types of proceedings that constitute "core" proceedings are enumerated in the statute, but the list is not exhaustive. Core proceedings include, but are not limited to—

(A) matters concerning the administration of the estate;

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11 or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

(C) counterclaims by the estate against persons filing claims against the estate;

(D) orders in respect to obtaining credit;

(E) orders to turn over property of the estate;

(F) proceedings to determine, avoid, or recover preference;

(G) motions to terminate, annul or modify the automatic stay;

(H) proceedings to determine, avoid, or recover fraudulent conveyances;

(I) determinations as to the dischargeability of particular debts;

(J) objections to discharge;

(K) determinations of the validity, extent, or priority of liens;

(L) confirmations of plans;

(M) orders approving the use or lease of property, including the the use of cash collateral;

(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims. 28 U.S.C. § 157(b)(2). The statute does not list the types of proceedings that constitute "related" or "non-core" proceedings.

In general, "core" proceedings include all proceedings integral to the restructuring of debtor-creditor rights, whether or not they involve questions of state law, and all proceedings in which the right to relief is created by title 11 of the United States Code. *See* 130 Cong.Rec. E1107–10 (daily ed March 20, 1984) (statement of Rep. Kastenmeier). All proceedings which are not integral to the restructuring of debtor-creditor rights and do not involve a cause of action created by title 11 fall into the residual category of "non-core" proceedings.

In *Northern Pipeline*, the Supreme Court held that suits to collect potential assets of the estate from parties who have not filed claims against the estate are not integral to the restructuring of debtor-creditor rights. 458 U.S. at 71, 84 n. 36, 102 S.Ct. at 2871, 2878 n. 36.

■ The proceedings which we transferred to the District Court and which are now pending before Your Honor are suits to collect accounts receivable from parties who have not filed claims against the estate. Decisional law subsequent to the enactment of BAFJA supports our view that such suits are "non-core" or "related" proceedings. The Bankruptcy Court in *Atlas Automation, Inc. v. Jensen, Inc.*, 42 B.R. 246, 247 (Bankr.E.D.Mich.1984) determined that an account receivable collection suit brought by the debtor did not constitute a "core" matter under § 157(b)(2) (1984), notwithstanding that, superficially it could be described as an action involving "property of the estate" and a request for a "turnover order" (the hallmark of "core" proceedings under that subsection). *See also Smith Douglass, Inc. v. Smith*, 43 B.R. 616 (Bankr.E.D.N.C.1984).

■ Finally, for the purposes of our discussion, we note that these five (5) proceedings would also have been considered "related" proceedings under paragraph (d)(3)(A) of the Emergency Rule and would have been the subject of review proceedings by the District Court had the Emergency Rule not been superseded by BAFJA on July 10, 1984.[16]

## II. *The Effect of BAFJA on Related Proceedings Pending Before the Courts on the Date of Enactment of BAFJA*

Our recitation of procedural background demonstrates that most of the procedural activity in these proceedings took place under the auspices of the Emergency Rule which was operative from December 25, 1982 until July 10, 1984. Your Honor's question specifically pertains to the validity of the service of the Complaints. It is apparent that service of the Complaints took place in each proceeding well before the enactment of BAFJA. It seems important, therefore, to address preliminarily why BAFJA is applicable to these proceedings at this juncture.

BAFJA was signed into law by the President on July 20, 1984, Section 122 provides:

SEC. 122. (a) Except as otherwise provided in this section, this title *[title I] and the amendments made by this title shall take effect on the date of the enactment of this Act.*

(b) Section 1334(c)(2) of title 28, United States Code, and section 1411(a) of title 28, United States Code, as added by this Act, shall not apply with respect to cases under title 11 of the United States Code that are pending on the date of enactment of this Act, or to proceedings arising in or related to such cases.

(c) Sections 108(b), 113 and 121(e) shall take effect on June 27, 1984. (emphasis added.)

Title I of BAFJA encompasses the legislation pertaining to jurisdiction and procedures, and contains all of the provisions with which this Report is primarily concerned. The exceptions alluded to in subsection (b) of Section 122, pertain to mandatory abstention and jury trials, and subsection (c) relates principally to the extension of the transition period. Thus, all of the provisions that are relevant for the pur-

---

**16.** The jurisdictional and procedural approaches of BAFJA with respect to "related" proceedings are nearly identical to those of the Emergency Rule. *See e.g.,* Cowans, The Bankruptcy Court and its Jurisdiction, *reprinted at* 42 B.R. No. 2 (November 13, 1984 Advance Sheet Yellow Sheets pp. 17, 30).

poses of our discussion became effective immediately on July 10, 1984.

Section 122 does not carve out an exception for pending adversary proceedings. In fact, the legislative history makes clear that the statute was specifically intended to apply to "related" proceedings which were pending on the date of enactment. An "analysis of Proposed Amendments" was presented to the Senate on the date before the passage of BAFJA, which states as follows with respect to the language of section 122 and the applicability of BAFJA to pending adversary matters:

> *[T]he Bill should become effective on the date it is enacted....* If the amendments do not apply to all other Title 11 proceedings then pending, then many title 11 proceedings will be vulnerable to challenge in litigation or on appeal for noncompliance with *Marathon.* There will be many Title 11 proceedings pending or in litigation when the amendments become law. Many of the Title 11 proceedings do or will require adjudication of claims or causes of action based upon state law. Thousands of these claims or causes provide no basis for Article III jurisdiction. Many thousands more do or will require the adjudication of the state-based claims where diversity invokes Article III jurisdiction.
>
> At present, this claim or cause is being adjudicated by bankruptcy judges with the district court serving the review function as provided by the Emergency Rules. If the Bill's amendments do not apply to these proceedings, they all run the substantial risk of complete or partial reversal because of the holding in *Marathon.*
>
> *Applying the amendments to all such proceedings allows all of the parties to avoid the risk of relying on the Emergency Rules to constitutionalize adjudications* that are beyond the bankruptcy judge and may be beyond Article III. Moreover, immediate application prejudices no one.

130 Cong.Rec. S8897 (daily ed. June 28, 1984) (emphasis added).

In conclusion, Congress intended for BAFJA to be immediately applicable with respect to pending "related" proceedings. *See In re Amatex,* 755 F.2d 1034, 1037. (3rd Cir. Feb. 22, 1985) (Title 1 of the 1984 Act controls appeals pending before effective date of the Act since none of the statutory exceptions are applicable).

In *Turbowind, Inc. v. Post Street Management, Inc. (In re Turbowind),* 42 B.R. 579 (Bankr.S.D.Cal.1984), the bankruptcy judge considered whether BAFJA applied to a proceeding similar to those at issue, which was instituted before the effective date of BAFJA but submitted for decision after it became effective. The *Turbowind* Court held that BAFJA must be applied:

> This Court is aware that on July 10, 1984, Title 11 of the United States Code was substantially amended by [BAFJA]. [P]ursuant to § 122(a), the amendments contained in Title I of the Act entitled "Bankruptcy Jurisdiction and Procedure" are applicable to cases and proceedings pending on the date of enactment. *Despite the fact that this Court took this matter under submission prior to the July 10, 1984 enactment date, the Court must apply the law in effect on the date of decision unless Congress expressly directed that the law be prospective only.* Bradley v. School Bd. of the City of Richmond, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974); *Carpenter v. Wabash Ry. Co.,* 309 U.S. 23, 27, 60 S.Ct. 416, 418, 84 L.Ed. 558 (1940); *In re Reynolds,* 726 F.2d 1420, 1422 (9th Cir.1984); *In re Kuefndorf,* 24 B.R. 555, 558 (W.D.Wis.1982).

42 B.R. at 582, n. 3 (emphasis added).

Our intention so far has been to establish that the proceedings pending before Your Honor are "non-core" proceedings and that BAFJA must be applied to these proceedings. Our ultimate purpose is to ascertain whether BAFJA in any way mandates which procedural rules are to govern "non-core" proceedings. Should the District Court, in reviewing the proposed findings of fact and conclusions of law of the Bankruptcy Judge in "non-core" matters, em-

ploy the Federal Rules of Civil Procedure, which govern civil actions pending before it, or the Bankruptcy Rules, because jurisdiction over the Bankruptcy Code has been invoked? We turn now to the statements of scope contained in the rules themselves for guidance in answering this question.

## III. *The Scope of the Bankruptcy Rules*

Bankruptcy Rules 1001 and 9001 interact to establish the overall scope of the Bankruptcy Rules. They provide, in pertinent part, as follows:

### *Bankruptcy Rule 1001*
#### SCOPE OF RULES AND FORMS; SHORT TITLE

*The Bankruptcy Rules* and Forms *govern procedure in United States Bankruptcy Courts in cases under* chapters 7, 9, 11 and 13 of *title 11* of the United States Code. The rules shall be cited as the Bankruptcy Rules and the forms as the Official Bankruptcy Forms. These rules shall be construed to secure the expeditious and economical administra-

tion of every case under the Code and the just, speedy, and inexpensive determination of every proceeding therein. (emphasis added).

### *Bankruptcy Rule 9001*
#### GENERAL DEFINITIONS

The definitions of words and phrases in § 101, § 902 and § 1101 and the rules of construction in § 102 of the Code govern their use in these rules. In addition, the following words and phrases used in these rules have the meanings indicated:

\*     \*     \*     \*     \*     \*

(2) "Bankruptcy court," "court," or "United States Bankruptcy Court" means the court of bankruptcy as defined in § 1(10)[17] and created under § 2a[18] of the Act and the United States Bankruptcy Court created under 28 U.S.C. § 151.[19]

Unfortunately, any attempt to apply the language of Bankruptcy Rules 1001 and

---

**17.** Section 1(10) of the 1898 Act provided, in part:

§ 1. Meaning of words and phrases.
The words and phrases used in this title and in proceedings pursuant hereto shall, unless the same shall be inconsistent with the context, be construed as follows:

\*     \*     \*     \*     \*

(10) "Courts of bankruptcy" shall include the United States district courts and the district courts of the Territories and possessions to which this title is or may hereafter be applicable;
11 U.S.C. § 1 (repealed November 6, 1978).

**18.** Section 11 of Chapter 2 of the 1898 Act provided, in part:

§ 11. Creation of courts of bankruptcy and their jurisdiction.
(a) The courts of the United States hereinbefore defined as courts of bankruptcy are hereby created courts of bankruptcy and are hereby invested, within their respective territorial limits as now established or as they may be hereafter changed, with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in proceedings under this title, in vacation, in chambers, and during their respective terms, as they are now or may be hereafter held. . . .

**19.** 28 U.S.C. § 151 was revised after Bankruptcy Rule 9001 was drafted and effectuated. At the

time Rule 9001 was promulgated, the version of § 151 which was in effect, ("BRA version of § 151), stated, in pertinent part, as follows:
*Creation and composition of bankruptcy courts*
(a) There shall be in each judicial district, as an *adjunct* to the district court for such district a bankruptcy court which shall be a court of record known as the United States Bankruptcy Court for the district.
(b) Each bankruptcy court shall consist of the bankruptcy judge or judges for the district in regular active service. Justices or judges designated and assigned shall be competent to sit as judges of the bankruptcy court.
28 U.S.C. § 151 (repealed July 10, 1984)
An entirely new version of § 151 became effective July 10, 1984. ("BAFJA version of § 151"), and the BRA version was repealed. The present law states as follows:
*Designation of bankruptcy courts*
In each judicial district, the bankruptcy judges in regular active service shall constitute a *unit* of the district court to be known as the bankruptcy court for that district. Each bankruptcy judge, as a judicial officer of the district court, may exercise the authority conferred under this chapter with respect to any action, suit, or proceeding and may preside along and hold a regular or special session of the court, except as otherwise provided by law or by rule or order of the district court.
28 U.S.C. § 151 (1984)

9001 in the context of BAFJA is fraught with interpretational problems.

■ For example, under BAFJA, related matters fall into the category of "proceedings", not "cases".[20] Consequently, an argument exists under Bankruptcy Rule 1001 that the Bankruptcy Rules do *not* govern proceedings. However, the absurdity of this argument becomes apparent when one considers the fact that "cases" under title 11 are generally not litigation matters, only proceedings are. Unless the term "cases" in Bankruptcy Rule 1001 is construed to include "proceedings", there could be no form of litigation in which the Bankruptcy Rules would govern. The drafters obviously intended for the Rules to govern some litigation matters as demonstrated by the existence of the Rules in Part VII which govern procedure in "adversary proceedings". *See* Bankruptcy Rule 7001 governing scope of the Part VII Rules.

The more critical interpretational problem posed by the scope provisions is the use of the term "United States Bankruptcy Courts" in Rule 1001. It is only in these Courts that the Bankruptcy Rules govern, and, in light of BAFJA, it is questionable whether the District Court may be construed as a "United States Bankruptcy Court".

In defining the term "United States Bankruptcy Court", Bankruptcy Rule 9001 incorporates both the definition of the "court of bankruptcy" under the 1898 Act, and the definition of the "United States Bankruptcy Court" under 28 U.S.C. § 151.[21] Upon review of the provisions of the 1898 Act and the version of § 151 which exists after BAFJA, the District Court does not appear to be a "United States Bankruptcy Court". We will recapitulate the matter in which BAFJA operates to achieve this result:

(1) The "United States Bankruptcy Court" was abolished because the legislation creating the court (BRA's version of § 151) was amended by BAFJA on July 10, 1984.

(2) A new "bankruptcy court" was created which does not appear to include the District Court within its definition. The "bankruptcy court" under BAFJA is a "unit of the district court," constituted of "the *bankruptcy judges* in regular active service," each of whom is "a judicial officer of the district court." (*See* BAFJA's version of § 151).

(3) The "court of bankruptcy" was abolished because the legislation creating it (the 1898 Act and BRA's "Transition Statute") expired on July 9, 1984. BAFJA accomplished this by amended § 404 of the "Transition Statute" to provide that the "court of bankruptcy" would continue to exist, but *only* through July 9, 1984, the day before enactment of BAFJA.[22] (Of the terms under review, only the term "court of bankruptcy" had ever included the District Court in its definition).

Thus, as of July 10, 1984, the "United States Bankruptcy Court" referred to in

---

**20.** *See* 28 U.S.C. § 1334(a) and (b) (1984); 28 U.S.C. § 157(a), (b) and (c) (1984).

**21.** Although Rule 9001 defines the term as *both* a "court of bankruptcy" (as created by the 1898 Act), *and* as a "United States Bankruptcy Court" (as defined by 28 U.S.C. § 151), there can be little question but that *only* the § 151 reference remains viable. The 1898 Act, from which the language is derived, has been repealed, and all legislation which kept the "courts of bankruptcy" temporarily alive during the "Transition Period" has now expired or been repealed.

**22.** BAFJA amended certain provisions of the "Transition Statute," formerly enacted under title IV of BRA. BAFJA changed § 404, pertaining to *Courts During Transition*," and § 405, pertaining to *Jurisdiction and Procedure During*

*Transition.*" BAFJA's revised version of § 404(a) provides in pertinent part, as follows:

... the courts of bankruptcy shall continue through [July 9, 1984] to be the courts of bankruptcy for the purposes of this Act [BRA] and the amendments made by this Act [BRA]. Each of the courts of bankruptcy so continued shall constitute a separate department of the district court that is such court of bankruptcy under the [1898] Act.

There is some confusion about the manner in which BAFJA accomplished this revision. Section 404 is *repealed* by § 114 of BAFJA. However, § 121 of BAFJA *amends* § 404(a) and (b), and keeps those subsections in effect up to the day before the enactment of BAFJA (i.e., up to July 9, 1984). Nonetheless, under either § 114 or 121, there ceased to be any "courts of bankruptcy" as of July 10, 1984.

Bankruptcy Rule 1001, does not include the District Court. Accordingly, it may also be argued that the Bankruptcy Rules do not extend to proceedings pending in the District Court after the effective date of BAFJA. As stated by two (2) commentators, the judges of district courts are not part of the bankruptcy court under BAFJA:

> Pursuant to this provision, the bankruptcy judges in a district constitute a unit of the district court and the unit is to be known as the bankruptcy court. It would appear therefore, that the district judges do not constitute the bankruptcy court although they may have the powers of the bankruptcy judges. *It would appear therefore that the district judges do not constitute the bankruptcy court [under BAFJA].*

A. Herzog & L. King, 1985 Collier Pamphlet Edition, Part 1—Bankruptcy Code, *Explanatory Comment* to 28 U.S.C. § 151 (1984) (emphasis added).

A few courts have also considered the meaning of the term "bankruptcy court" under § 151 of BAFJA. In *Bancohio National Bank v. T.P. Long (In re T.P. Long),* 43 B.R. 692 (Bankr.N.D.Ohio 1984), the Bankruptcy Judge reviewed BAFJA as well as the bankruptcy legislation which had preceded it, and stated as follows:

> Thus *the court of bankruptcy, as defined by section 1(10) and 2(a) of the Bankruptcy Act of 1898* as amended, which was continued during the transition period pursuant to section 404(a) of the 1978 Act, *no longer exists.*
>
> \*     \*     \*     \*     \*     \*
>
> Furthermore, the *1984 Act creates a new bankruptcy court system* which was obviously *meant to supersede the bankruptcy courts created by* section 201 of *the 1978 Act.* Section 104 of the 1984 Act enacts Chapter 6 of Title 28 of the United States Code, 28 U.S.C. sections 151–158. Unlike the stillborn court of section 201, *this new bankruptcy court is not an independent and separate court; it is instead a 'unit' of the district court.* Obviously, Congress could not have intended to create two distinct bankruptcy court systems, each with dif-

ferent powers. It is just as obvious that the 28 U.S.C. Section 151 *et seq.* enacted by section 201 of the 1978 Act cannot coexist with the 28 U.S.C. Section 151 *et seq.* enacted by section 104 of the 1984 Act. To hold otherwise would result in chaos.

*Id.* at 696–697 (emphasis added).

In *Wayzata Bank & Trust Co. v. A & B Farms (In re Victoria Company),* 42 B.R. 533 (Bankr.D.Minn.1984), another Bankruptcy Judge discussed the meaning of the "bankruptcy court" in the context of BAFJA. In determining a motion for remand to the district court, the Bankruptcy Judge reviewed the new removal provisions, and distinguished between "bankruptcy judges" and the "district court" as follows:

> .... Because all such proceedings have been referred to the bankruptcy court, the result of the removal is to remove the proceeding to the bankruptcy court. The bankruptcy judges are judicial officers of the district court, 28 U.S.V. §§ 151 and 152(a)(1).... The proceeding is then no longer referred to the bankruptcy judges under § 157(a). The result is to 'remand' the proceeding to the district court from the bankruptcy court.
>
> ....
>
> 28 U.S.C. § 151 provides that bankruptcy judges constitute a unit of the district court known as the bankruptcy court for the district.

*Id.* at 536, n. 2.

In summary, only a few courts have considered the meaning of the term "bankruptcy court" under section 151 of BAFJA, and for the most part, those courts have construed the term to exclude the District Court from its definition. However, as the courts continue to deal with this problem, different interpretations are possible. *See Fidelity Union Life Insurance Company v. Lorren (In re Lorren),* 45 B.R. 584, 12 Bankr.Cr.Dec. (CRR) 549 (Bankr.N.D.Ala. 1984) (reference to "district court" includes Bankruptcy Judge as a unit of the District Court).

The language of Bankruptcy Rules 1001 and 9001 did not pose the same interpretational problem under the Emergency Rule.

During the tenure of the Emergency Rule, the Bankruptcy Rules were applicable to proceedings in the district courts because, at that time, the term "courts of bankruptcy" clearly included the district courts, and the term had not yet been abolished by BAFJA.

Paragraph (b) of the Emergency Rule governed the "Filing of bankruptcy papers," and provided:

The bankruptcy court constituted by § 404 of Public Law 95–598 shall continue to be known as the United States Bankruptcy Court for this district. The Clerk of the Bankruptcy Court is hereby designated to maintain all files in bankruptcy cases and adversary proceedings. All papers in cases or proceedings arising under or related to Title 11 shall be filed with the Clerk of the Bankruptcy Court regardless of whether the case or proceeding is before a bankruptcy judge or a judge of the district court, except that a judgment by the district judge shall be filed in accordance with Rule 9021 of the Bankruptcy Rules.

Thus, the Emergency Rule sought to perpetuate the system provided for by § 404 of the "Transition Statute" of BRA. Pursuant to § 404, "courts of bankruptcy" under the 1898 Act were to remain viable during transition. Since "courts of bankruptcy" were tantamount to the district courts, and since the "Transition Period" ultimately extended until July 9, 1984, it appears that under the Emergency Rule, the district courts could be equated with "United States Bankruptcy Courts".

Moreover, the Emergency Rule states as follows, with regard to "Bankruptcy Rules and Title IV of Public Law 95–598":

Courts of bankruptcy and procedure in bankruptcy shall continue to be governed by Title IV of Public Law 95–598 as amended ["Transition Statute" of BRA] and by the bankruptcy rules prescribed by the Supreme Court of the United States pursuant to 28 U.S.C. § 2075 and limited by SEC. 405(d) of the Act [BRA] to the extent that such Title and Rules are not inconsistent with the holding of ... *Northern Pipeline.*

Emergency Rule ¶ g.

Finally, with regard to the "Effective Date and Pending Cases," the Emergency Rule stated:

This rule shall become effective December 25, 1982 and shall apply to all bankruptcy cases and proceedings not governed by the [1898] Act as amended, and filed on or after October 1, 1979 ...

*Id.* ¶ h.

Several cases decided during the tenure of the Emergency Rule support the view that under the Emergency Rule, the term "United States Bankruptcy Courts" included the district courts.

In *Barton v. Armstrong (In re River Transportation Company)*, 35 B.R. 556, 11 Bankr.Ct.Dec. (CRR) 300 (Bankr.M.D. Tenn.1983), the Bankruptcy Judge considered Bankruptcy Rule 9015(b)(3), which permits the "court" to determine whether the right to a trial by jury exists. Seeking a definition of the term "court," the Bankruptcy Judge referred to Rule 9001(2), and found:

The 'court' in Rule 9015 which will determine whether to grant a jury trial request and conduct the jury trial is defined by Fed.R.Bankr.P. 9001(2) to include both the United States district courts defined in § 1(10) of the former Bankruptcy Act *and* the United States bankruptcy courts created under 28 U.S.C. § 151.

This definition explicitly allows a jury trial to be available in either court.[23]

**23.** In a footnote, the Bankruptcy Judge pointed out a strongly opposing viewpoint held by the District Court for the Southern District of Ohio:

This court is aware that District Judge Robert E. DeMascio, Chairman of the Bankruptcy Committee of the Judicial Conference of the United States, recently opined to Chief Judge Carl B. Rubin of the Southern District of Ohio as to the meaning of 'court.' This opinion, while completely contrary to the stated definitial language of Federal Rule of Bankruptcy Procedure 9001(2), would if correct support the proposition that the court granting and conducting the jury trial would necessarily be the bankruptcy court rather than the district court. As Judge DeMascio's letter states:

September 30, 1983

Chief Judge Carl B. Rubin

35 B.R. at 559, 11 Bankr.Ct.Dec. (CRR) at 302.

In *In re Hilltop Sand & Gravel, Inc.*, 35 B.R. 412 (N.D.Oh.1983), the District Court agreed with the ruling of the Bankruptcy Judge in the *River Transportation* case regarding the meaning of the term "court." In the context of Bankruptcy Rule 5002, which pertains to the designation of professional appointees under the Code who are related to or associated with "any judge of the court making the appointment," the *Hilltop* court construed Bankruptcy Rule 9001. The Court below had ruled that bankruptcy judges were precluded from appointing relatives of district court judges, holding that a "court of bankruptcy" is, essentially, a single entity and a separate court, which is made up of *both* the bankruptcy court and the district court. Accordingly, a bankruptcy judge would be precluded from appointing relatives of district judges because both the bankruptcy judges and the district judges are judges of the "court of bankruptcy."

On review, the District Court examined Bankruptcy Rule 9001:

If the Court were to stop right here, look no further and consider nothing else but the words of Rule 9001(2) and Section 1(10) of the Bankruptcy Act of 1898, it might be possible to conclude, as the bankruptcy judge did, that Bankruptcy Rule 5002 precludes bankruptcy judges from appointing relatives of district judges. However, this Court is not considering Rule 5002 in a vacuum. This Court must consider the entire scheme of

the bankruptcy law plus the history and reasons for the various provisions of the bankruptcy law and rules in order to reach the proper interpretation ... we must also consider the interrelationship between the courts and their powers, duties and responsibilities.

35 B.R. at 415. Finding that the Bankruptcy Judge was "clearly wrong," the Court held as follows:

The phrase "courts of bankruptcy" in Bankruptcy Rule 9001(2) is a term of art that exists merely for definitional purposes to identify the *two courts* that may hear bankruptcy cases, that is district courts and bankruptcy courts. "Courts of bankruptcy" in and of itself is not a separate and independent court.

Also, the Court notes that the phrase "courts of bankruptcy" appears in a bankruptcy rule, not a statute. A procedural rule cannot create a court. Congress, by statute, has created two separate courts that may hear bankruptcy cases. Each court acts independently of the other...."

*Id.* at 417 (emphasis added).

To summarize this section of our Report, it can be stated with some degree of certainty that under the Emergency Rule, the District Court could apply the Bankruptcy Rules to "related proceedings" without conflict with the statutory provisions of the Bankruptcy Code. However, the District Court's authority to apply the Bankruptcy Rules in reviewing "non-core" proceedings is now uncertain due to the change in stat-

United States District Court
Southern District of Ohio
Cincinnati, Ohio 45202
Dear Judge Rubin:
I have your September 27, 1983 letter *concerning the scope of Bankruptcy Rule 5002. That rule was promulgated solely for the bankruptcy court created pursuant to the Bankruptcy Reform Act of 1978. Accordingly, it cannot and does not apply to the United States District Court. A United States District Judge is not included in the phrase 'any judge of the court' because that phrase refers only to the 1978 bankruptcy court.*
To be sure I was correct, I spoke to Professor King, a member of the Bankruptcy Committee. He readily agreed with this view expressed in our earlier telephone conversation.

Of course, if the relationship described in Rule 5002 is with a district judge handling a bankruptcy appeal or otherwise, he/she would be guided by the disqualification rules that have always been liberally construed.
Sincerely,
/ss/ Robert E. Demascio
U.S. District Judge
35 B.R. at 559 n. 2, 11 Bankr.Ct. Dec. (CRR) at 302 n. 2 (emphasis added). In the view of Judge DeMascio, the scope of the Bankruptcy Rules would apparently *not* extend to proceedings in the district court, although it is possible to argue that Judge Demascio's interpretation is germane only in the context of Rule 9015.

utory language made by BAFJA. The principal reason for the uncertainty is the fact that Congress revised the jurisdictional language in the statute without revising the language of the Bankruptcy Rules, which had become effective in 1983, creating inconsistencies in the usage of terms between the statute and the rules.[24] Although the intent of Congress with respect to the continued applicability of the Bankruptcy Rules post-BAFJA is unclear, it is clear that the drafters of the Rules intended for their adaptation to the new court system. At the time the Bankruptcy Rules were promulgated in 1983, after *Northern Pipeline*, and during the tenure of the Emergency Rule, the drafters knew that legislative revision to the Code was inevitable. Therefore, the Advisory Committee specifically provided in the Preface to the Bankruptcy Rules for such a contingency by stating that the Rules "are designed to adapt to amendments to the Code necessitated by ... (*Northern Pipeline*)."

## IV. *The Scope of the Federal Rules of Civil Procedure*

Rules 1 and 81 govern the scope of the Federal Rules of Civil Procedure and provide, in pertinent part, as follows:

*Fed.R.Civ.P. 1.* Scope of Rules

These rules govern the procedure in the United States district courts in all suits of a civil nature whether cognizable as cases at law or in equity or in admiralty, with the exceptions stated in Rule 81.

They shall be construed to secure the just, speedy, and inexpensive determination of every action.

*Fed.R.Civ.P. 81.* Applicability in General

(a) To What Proceedings Applicable.

(1) These rules do not apply to prize proceedings in admiralty governed by Title 10, U.S.C. §§ 7651–7681. *They do not apply to proceedings in bankruptcy* or proceedings in copyright under Title 17, U.S.C., except in so far as they may be made applicable thereto by rules promulgated by Supreme Court of the United States....

(emphasis added).

Construed together, these Rules provide that the Federal Rules generally govern procedure in all civil suits "in the United States district courts," *except* "proceedings in bankruptcy," and other proceedings specifically enumerated in Fed.R.Civ.P. 81.

■ At first glance, the exception carved out in the Federal Rules of Civil Procedure for "proceedings in bankruptcy" might appear helpful to a determination of the issue at bench. In actuality, however, the term "proceedings in bankruptcy" has no correlation to the "non-core" proceedings that are now pending before Your Honor.

Fed.R.Civ.P. 1 and Fed.R.Civ.P. 81 were promulgated when the Bankruptcy Act of 1898 was still in effect. They have not been amended since 1971 despite a major revision of the substantive bankruptcy law in 1978. When the drafters of Rules 1 and 81 chose the term "proceedings in bankruptcy", they were referring to "summary" matters. Under the jurisdictional scheme of the Act, "proceedings in bankruptcy" encompassed only "summary" matters which arose under the substantive provisions of the bankruptcy statute. The District Court, acting as a "court of bankruptcy" under § 1(10), had jurisdiction over "summary" matters and could, in turn, refer a "summary" matter to a bankruptcy referee.

In the Advisory Committee Note to the Preliminary Draft of the Proposed Amendment to Bankruptcy Rule 5002, the Committee expressly noted that:

In both subdivisions of the amended rule [5002], "bankruptcy judge" has been substituted for "judge." The amended rule makes clear that it only applies to relatives of, or persons connected with, the bankruptcy judge. *See In re Hilltop Sand and Gravel, Inc.,* 35 B.R. 412 (N.D.Ohio 1983).

---

**24.** It is not clear whether the failure of Congress to amend the language of the Bankruptcy Rules to correspond with the language of BAFJA was due to Congressional oversight. Bankruptcy Rules 2002 and 3001, as well as Official Form No. 1, were revised by Congress at the time of enactment of BAFJA. Subsequently, the Committee on Rules of Practice and Procedure of the Judicial Conference proposed amendments to Bankruptcy Rules 5002 and 5004.

"Summary" matters under the 1898 Act were analagous in nature to "core" proceedings under the jurisdictional framework of BAFJA and the Emergency Rule. The Rules of Bankruptcy Procedure, in effect under the Act, applied to "summary" proceedings, but had no bearing upon "plenary" matters—thus, the exception under the Federal Rules of Civil Procedure for "proceedings in bankruptcy". Such "proceedings" had their own set of rules—the Rules of Bankruptcy Procedure.

Under the 1898 Act, neither the district courts nor the bankruptcy referees were vested with jurisdiction over "plenary" matters, which were only related to a bankruptcy case. Unless an independent basis for jurisdiction in the District Court existed (e.g., federal question or diversity) a "plenary" suit could not be brought in the federal district courts even though the suit may have involved a party in bankruptcy.

The Federal Rules of Civil Procedure governed all "plenary" matters brought in the district courts. *See Chatz v. Freeman,* 204 F.2d 764 (7th Cir.1953). Accordingly, if a suit was "plenary" in nature, it was by definition *not* a "proceeding in bankruptcy". If the District Court had an independent basis for exercising jurisdiction over this type of action, it used its own Federal Rules of Civil Procedure to govern procedure. "Plenary" suits were generally analagous in nature to "non-core" proceedings under the jurisdictional scheme of BAFJA and the Emergency Rule.

In light of the return to a procedural distinction between matters which involve substantive bankruptcy law and those which are "related to" a bankruptcy case under BAFJA, an argument might be made that the Federal Rules of Civil Procedure should govern "non-core" or "related" proceedings, just as they governed "plenary" matters under the 1898 Act. In our view, this argument is untenable when considered in the context of the entire scheme of the bankruptcy law, and in particular, the most recent developments. A short review of the jurisdictional frameworks prior to BAFJA and the operation of the Federal Rules and the Bankruptcy Rules in the context of each follows.

A. *Jurisdiction Under the 1898 Act and Use of the Procedural Rules*

As has been previously stated, the district courts were designated "courts of bankruptcy" and were vested with jurisdiction over original proceedings under the 1898 Act. A system of referees was created whereby matters were referred from the district courts to the referees, but the referee's powers were always subject to review by the judge. *See* § 1(20) of the 1898 Act. In accordance with § 38 of the Act, the referees were vested with jurisdiction to consider matters referred and to perform other duties conferred on courts of bankruptcy, including those incidental to ancillary jurisdiction.

Collier has explained the jurisdiction of the courts of bankruptcy under the Act as follows:

No legal obstacles prevent Congress from making the jurisdiction of the court of bankruptcy co-extensive with the territorial limits of the United States, but the present Act merely invests the bankruptcy courts generally with jurisdiction 'within their respective territorial limits as now established, or as they may be thereafter changed.' Thus, prior to the Federal Rules of Civil Procedure it was held, in the absence of some applicable federal statute, that although the bankrupt's property, wherever situated, came within the custody of the bankruptcy court as of the time of filing the petition and the court could adjudicate all claims relating thereto, the bankruptcy court could not extend its process beyond the territorial limits of the district in which said court was held.

Ancillary proceedings were necessary to effect a sale of real estate lying outside the district, to direct the delivery of the bankrupt's assets located in another district, or to enjoin a nonresident from suing in another jurisdiction where he was not a party to the bankruptcy proceeding, unless the nonresident had been properly served within the district of the forum.

3 *Collier on Bankruptcy* ¶ 2.11(1) (14th ed. 1976)

The jurisdiction of the bankruptcy referee, like that of the court of bankruptcy, was territorial. It did not extend beyond the jurisdiction of the district within which the court of bankruptcy sat. *See, e.g.,* 2A *Collier on Bankruptcy* ¶ 38.02 (14th ed. 1976).

Although Rule 704 of the Rules of Bankruptcy Procedure allowed for *nationwide* service of process, the courts' territorial jurisdiction was an obvious limitation to the exercise of that power. Moreover, the courts of bankruptcy had jurisdiction only over "summary" matters; "plenary" proceedings had to be instituted in a state or federal court with an independent jurisdictional base.

Service of process by mail, without acknowledgment, pursuant to Rule 704(c) of the Rules of Bankruptcy Procedure was regularly authorized under the 1898 Act. In *Billmeyer v. Del Mar News Agency (In re Universal Display & Sign Co.)*, 541 F.2d 142 (3d Cir.1976), a default judgment was upheld in a case where process had been served in accordance with Rule 704(c), (f), notwithstanding defendant's efforts to collaterally attack it. Similarly, in *Good Hope Refineries, Inc. v. Brashear*, 588 F.2d 846 (1st Cir.1978), mail service in accordance with Rule 704 was upheld even though its adequacy had been contested by the defendant (on the ground that service was improperly directed to his attorney).

Thus, service of process by mail, in accordance with Rule 704, was approved in the context of adversary proceedings under the 1898 Act. However, the precedential value of these rulings must be viewed in light of the fact that in those cases, the service question arose only in the context of a "summary" (core) proceeding.

B. *Jurisdiction under BRA and Use of the Procedural Rules*

With the enactment of the Bankruptcy Reform Act of 1978 ("BRA"), Congress extended the jurisdiction of the new United States Bankruptcy Courts to the territorial limits of the United States. Thus, nationwide service of process as authorized by Rule 704 would be combined with nationwide jurisdiction, to permit Bankruptcy Courts to exercise *in personam* jurisdiction over anyone who could be served by mail within the United States. *See Jahan Co. v. Dakota Industries, Inc.*, 27 B.R. 575 (D.N.J.1983); *In re Trim Lean Meat Products*, 11 B.R. 1010 (D.De.1981); *In re Century Entertainment Corp.*, 21 B.R. 160 (Bankr.S.D.Oh.1982).

*Northern Pipeline* invalidated the jurisdictional grant of authority to non-Article III bankruptcy judges over matters "related to" bankruptcy in 28 U.S.C. § 1471(c). However, the grant of original jurisdiction to district courts contained in 28 U.S.C. § 1471(a) over title 11 and related proceedings survived *Northern Pipeline* intact. *See Gold v. Johns-Mansville Sales Corp.*, 723 F.2d 1068, 1075 & n. 11 (3d Cir.1983); *see also Hanna v. Philadelphia Asbestos Co.*, 743 F.2d 996, 999–1000 (3d Cir.1984); *Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd., supra,* 709 F.2d at 200.

Since the Code was enacted, several decisions have upheld the validity of service by mail, without acknowledgment, in accordance with Bankruptcy Rule 704. *See, e.g., Jahan Co. v. Dakota Industries, Inc.*, 27 B.R. 575, 581 (D.N.J.1983) in which service under Rule 704 was upheld, notwithstanding defendant's contention that service was improper because it failed to comply with the requirements of the Federal Civil Rules and the New Jersey Court Rules.

C. *Jurisdiction Under the Emergency Rule and Use of the Procedural Rules: A Jurisdictional and Procedural Model Analogous to BAFJA*

Upon expiration of the Supreme Court's stay of the *Northern Pipeline* decision, the district courts, on the recommendation of the Judicial Conference, enacted the Emergency Rule as a stop-gap measure to continue the bankruptcy courts in operation until Congress enacted remedial legislation. The Emergency Rule established a system for automatic referral of bankruptcy matters to bankruptcy judges, providing, however, that in "related" proceedings the bankruptcy judge could not enter a final order, but had to submit recommendations

to the district court. Since the bankruptcy judge only exercised the jurisdiction retained by the district court, which is clearly an Article III Court, this delegation of authority was widely upheld by the courts, including the Third Circuit. *See Coastal Steel.*

Practice under the Emergency Rule was further complicated when the new Bankruptcy Rules became effective on August 1, 1983. Because the Bankruptcy Rules were originally designed to coexist with the substantive provisions of the BRA, a variety of discrepancies ultimately surfaced between the provisions of the Rules and the Emergency Rule.

One specific conflict emerged between the provision of Bankruptcy Rule 8013 that findings of fact of the bankruptcy judge could be set aside "only if clearly erroneous" and the provision of the Emergency Rule providing for *de novo* review of these findings by the District Court.[25]

In *Frank v. Arnold (In re Morrissey)*, 717 F.2d 100 (3d Cir.1983), the validity of the Bankruptcy Rules in "procedural" matters was upheld by the Third Circuit Court of Appeals under the jurisdictional scheme of the Emergency Rule. In resolving the issue in favor of the Bankruptcy Rules, the Third Circuit held that the Bankruptcy Rules were national in scope, whereas the various Emergency Rules were merely "local rules" which could not conflict with the national character of the Bankruptcy Rules. Although *Morrissey* held that the Bankruptcy Rules were to govern as to "procedural" matters, such as the standard of review issue presented in that case, it also held that the Emergency Rule was controlling as far as "jurisdictional" matters were concerned.

The Emergency Rule served as the jurisdictional model for the statutory scheme set up by Congress in BAFJA. Apparently, it was the intent of the proposers of the Kindness-Kastenmeier Amendment that the new court system mirror the one implemented by the Emergency Rule. Both the Emergency Rule and BAFJA preserve the distinction between "core" a̅ ̅ "related" matters, and the exact same recommendation and review procedures are utilized by the bankruptcy judge and the district court in the conduct of "related" proceedings under each. *See* 28 U.S.C. § 157(b) and (c) (1984); Emergency Rule at ¶ (d) and (e). That the jurisdiction and procedural approaches of the Emergency Rule and BAFJA are nearly identical with respect to "related" proceedings seems to be a fairly well-accepted point. *See* Cowans, *The Bankruptcy Court and its Jurisdiction*, reprinted at 42 B.R. No. 2 (November 13, 1984 Advance Sheet Yellow Sheets pp. 17, 30). The author concludes that the meaning of "related" matters under the Emergency Rule "probably" has not changed under BAFJA because the jurisdictional underpinnings are virtually identical: "It comes as a surprise to many that the basic grant of jurisdiction in Section 1471(a) and (b) (repealed July 10, 1984) is literally unchanged in Section 1334(b) (of title 28, United States Code." *Id.*

## V. *Summary of Arguments Concerning Which Procedural Rules Should Govern "Non-Core" Proceedings*

If the Bankruptcy Reform Act of 1978 had accomplished its purpose, the troublesome distinction between "summary" and "plenary" proceedings in bankruptcy would have been abolished and pervasive jurisdiction over both types of actions would have been vested in the "United States Bankruptcy Courts". If that jurisdictional scheme had worked, the only "proceedings in bankruptcy" which would have reached

---

**25.** Bankruptcy Rule 8013 provides:
On an appeal the district court ... may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree, or remand with instructions for further proceedings. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

The Emergency Rule provided for *de novo* review of proposed findings of fact and conclusions of law in "related" matters. In "non-core" proceedings under the 1984 Amendments, 28 U.S.C. § 157(c)(1)(1984) also provides for *de novo* review by the district court of any matters to which any party has timely and specifically objected.

the District Court would have reached it in its appellate capacity. There would have been no reason for the Federal Civil Rules, which govern civil litigation, to have applied to any "proceedings in bankruptcy" at the district court level. The Bankruptcy Rules were drafted with the spirit of the court system envisioned under the Bankruptcy Reform Act of 1978 in mind. Procedure in the new court system was to be streamlined with one set of procedural rules governing all types of litigation.

BAFJA, in effect, recreated a two-tiered court system so that arguably, vestiges of the summary/plenary jurisdictional model remain. However, it was clearly not the intent of Congress to return to the same jurisdictional scheme of the 1898 Act. BAFJA vests pervasive jurisdiction over all cases and all proceedings in bankruptcy in a single court. Under the 1898 Act, the district court had no independent basis for jurisdiction over proceedings other than "summary" bankruptcy matters.

The Federal Rules of Civil Procedure, like the Bankruptcy Rules, do not mesh with the new scheme of jurisdiction contained in BAFJA. The statutory framework within which the Federal Rules of Civil Procedure were implemented is no longer relevant with respect to substantive bankruptcy law. The only statutory framework within which the term "proceedings in bankruptcy" under Fed.R.Civ.P. 81 truly makes sense is the 1898 Act.

■ Upon review of both sets of rules in light of the new statutory language, technically it can be argued that the Federal Rules of Civil Procedure should govern "non-core" related proceedings and the Bankruptcy Rules should govern only "core" bankruptcy matters. Adherence to this technical argument would result in upheaval of the current system. A cumbersome dual procedural process would take its place whereby every time an adversary proceeding is commenced, the plaintiff would have to determine whether the un-

derlying cause of action is a "core" or "non-core" proceeding and follow the applicable set of procedural rules. Such a result is counter to the fundamental principle of bankruptcy law that procedure in bankruptcy cases should be efficient and expeditious. Moreover, the establishment of a dual procedural system is undoubtedly in conflict with the intent of Congress to concentrate jurisdiction over all bankruptcy cases and all proceedings in a single court, as evidenced by the grant of pervasive jurisdiction to the district courts in BAFJA.

■ Implementation of the statutory framework of BAFJA can be accomplished in a sensible and practical manner by having both the bankruptcy judges and the district court judges apply the same set of procedural rules in all proceedings having a nexus to a bankruptcy case, including proceedings arising under, arising in, and related to bankruptcy cases. A conclusion that the Bankruptcy Rules are applicable to both "core" and "non-core" proceedings in bankruptcy makes sense especially when one considers the effect a contrary decision would have on proceedings pending on the date of enactment of BAFJA. In all "non-core" proceedings where service of process was effectuated under Bankruptcy Rule 7004(b), the service would be invalid in retrospect. Such an outcome would result even though the same manner of service was upheld under the Emergency Rule [26] and the District Court presumably could have entered default judgment in the same proceedings prior to July 10, 1984. Clearly, such a prejudicial result was not intended by Congress as evidenced by the remarks "... immediate application (of BAFJA) prejudices no one". *See* discussion regarding immediate applicability of BAFJA, *supra* p. 722.

■ One final argument may be relevant in favor of the application of the Bankruptcy Rules, rather than the Federal Rules of Civil Procedure, to "non-core" proceedings pending before the district courts. During

---

**26.** Under the Emergency Rule, the District Court for the Eastern District of Pennsylvania entered numerous default judgments in favor of Windsor in related proceedings where the complaints were served by mail, without acknowledgment under Bankruptcy Rule 7004(b) or it predecessor, Rule 704(c).

the time when the substantive amendments to the Bankruptcy Code were making their way through the legislative process, Congress was obviously aware that related proceedings were being commenced and litigated in accordance with the Bankruptcy Rules under the Emergency Rule. Yet, Congress did nothing to indicate that this system should change under BAFJA. Congress could easily have revised the scope provisions of the Bankruptcy Rules by amending their language, but did not do so. Thus, we conclude that the same approach followed under the Emergency Rule should be adopted by the district courts in the analogous context of BAFJA, and the District Court may enter default judgment in a "non-core" proceeding even though service was accomplished under Bankruptcy Rule 7004(b).

## VI. *The Validity of Bankruptcy Rule 7004 From the Standpoint of Due Process Requirements*

Bankruptcy Rule 7004(b) permits an adversary proceeding to be commenced in bankruptcy court by mailing a copy of the summons and complaint to the defendant without acknowledgment of receipt by the defendant. This method of service is in addition to the methods of service authorized by Fed.R.Civ.P. 4(d). To the extent that Bankruptcy Rule 7004(b) allows service to take place by mail in all adversary proceedings, whether "core" or "non-core", the question arises as to whether any due process rights of parties who have not assented to the jurisdiction of the bankruptcy court may be implicated. Specifically, in the context of the five (5) proceedings pending before Your Honor in the Windsor bankruptcy case, the question is whether the defendants may have their rights adjudicated even though no consent to the jurisdiction of the bankruptcy court has been manifested.

Service by mail was first authorized under the Rules of Bankruptcy Procedure while the 1898 Act was in effect. At that time, adversary proceedings could be instituted only against parties who were otherwise subject to the jurisdiction of the "court of bankruptcy". The "courts of bankruptcy" under the 1898 Act included *only* the district courts.

Congress modified the jurisdictional provisions of the 1898 Act in 1978 through the enactment of the Bankruptcy Reform Act of 1978, ("BRA") Pub.L. 95–598. The existing Rules of Bankruptcy Procedure remained applicable until the revised Bankruptcy Rules became effective on August 1, 1983. The new rules were drafted to accommodate the pervasive jurisdictional grant made to the "United States Bankruptcy Courts". *See* title IV of BRA, §§ 404(a) and 405(b) (repealed July 10, 1984). Thus, under the jurisdictional and procedural scheme implemented by BRA, service by mail was authorized, coupled with nationwide service of process.

During the operative period of the Emergency Rule, bankruptcy judges and the district courts continued to allow adversary proceedings in bankruptcy cases to be instituted by mail, pursuant to Bankruptcy Rule 7004(b), even though bankruptcy judges could not enter final judgment in "related" proceedings.

In light of the enactment of BAFJA, which substantially revised the grant of jurisdiction contained in BRA, it is appropriate to question whether service by mail in the context of "related" or "non-core" proceeding is still a valid method of service. Fed.R.Civ.P. 4 does not provide for the institution of a civil action by mail service without acknowledgment of receipt by the defendant. Therefore, the question arises as to why a less stringent method of service is permissible for the institution of civil proceedings with only a nexus to a bankruptcy case.

### A. *General Due Process Standards*

The notion of procedural due process generally requires that an individual be given notice and an opportunity for a hearing when significant "due process rights" are "implicated." There is a two-step process for determining whether a due process right is implicated. The primary step is to establish that a property or liberty interest, within the protection of the Fifth Amendment, is threatened. Once ei-

ther of these interests is found to exist, the due process safeguards will attach. The second step requires the balancing of the interests involved (*i.e.*, the interests of the individual must be weighed against the interests of the government), to determine what kind of notice and hearing will satisfy the requirements of the Due Process Clause. Generally speaking, the more significant the interest involved, the more stringent the requirement of notice and hearing.

A property interest which would invoke the protection of the Due Process Clause "results from a legitimate claim of entitlement created and defined by an independent source such as state or federal law." *Russell v. Landrieu*, 621 F.2d 1037, 1040 (9th Cir.1980). Obviously, a money judgment against a person, such as those sought in the instant five (5) actions, implicates a due process property interest.

The second step is to determine what procedural safeguards must be provided to satisfy the requirements of the Due Process Clause. To make this determination, the interests of the government must be balanced with those of the individual. For example, in *Goldberg v. Kelley*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), the Supreme Court was faced with the question of the constitutionality of a state welfare system under which termination of welfare benefits could be achieved without a prior hearing. The remedy provided for a recipient whose benefits had been improperly terminated was a subsequent appeal. The Supreme Court ruled that a prior hearing was required in order to satisfy the mandates of due process. In that case, the State had argued that there were compelling governmental interests, including the need for conservation of fiscal and administrative resources, which demonstrated a need for the existing program. These concerns were held to be insufficient to extinguish the requirement of a prior hearing where such a fundamental right was threatened.

In other articulations of the standard, the Supreme Court has stated that " '[D]ue process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Cafeteria & Restaurant Workers Local 473 v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961). It is a "flexible" concept which "calls for such a procedural protection as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972) (emphasis added).

In *Chrysler Corporation v. Fedders Corporation*, 670 F.2d 1316 (3d Cir.1982), the Court of Appeals cited the proper "framework" for analyzing what procedural safeguards are required by due process:

"[R]esolution of the issue whether the administrative procedures provided here are constitutionally sufficient requires analysis of the governmental and private interests that are affected. More precisely, our prior discussions indicate that identification of the specific dictates of *due process generally requires consideration of three distinct factors: First, the private interest* that will be affected by the official action; *second the risk of an erroneous deprivation* of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; *and finally, the Government's interest*, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. (citations omitted)."

670 F.2d at 1327, *quoting Mathews v. Eldridge*, 424 U.S. 319, 334–35, 96 S.Ct. 893, 902–03, 47 L.Ed.2d 18 (1976) (emphasis added). *See also, Fahey v. Mallonee*, 332 U.S. 245, 67 S.Ct. 1552, 91 L.Ed. 2030 (1946); *Federal Deposit Insurance Corp. v. Lesselyoung*, 476 F.Supp. 938 (E.D.Wisc.1979); *Feinberg v. Federal Deposit Insurance Corp.*, 420 F.Supp. 109 (D.D.C.1976) (all relating to the lessened due process concerns where government's interest in regulating the banking industry is concerned).

The matters at hand involve a court action which may give rise to a money judgment and, possibly, a lien against a judg-

ment debtor. It is clear that a property interest of the defendants is implicated. Thus, some form of notice and opportunity for a hearing is required. The question is whether the notice provided by service by mail under Bankruptcy Rule 7004(b) is sufficient under the Due Process Clause. This determination requires a balancing of the governmental and individual interests as they appear in these cases. These interests must be examined in the context of bankruptcy law. In this context, the relevant interests to be balanced include those of the debtor and all of its creditors, as well as the exigent circumstances attendant to most bankruptcy matters.

### B. *Due Process Standards in the Context of Bankruptcy*

■ In *Chrysler Corporation*, the Court of Appeals for the Third Circuit ruled that, within the "context of creditors remedies," the necessary due process inquiry was "whether the statute [rule] effected 'a constitutional accommodation of the conflicting interests of the parties.'" 670 F.2d at 1328, *quoting Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 607, 94 S.Ct. 1895, 1900, 40 L.Ed.2d 406 (1974). The Court reiterated the language of a prior ruling on the subject of the due process standards applicable in "creditors remedies" cases:

> In *Finberg v. Sullivan*, [634 F.2d 50, 58 (3d Cir.1980)], we summarized the holdings of the Supreme Court's creditor remedies cases as follows:
>
>> The principles established in the controlling Supreme Court decisions, to summarize, are that *notice and an opportunity to be heard before an attachment are not absolutely necessary*. However, the available procedures must afford the debtor adequate protection against erroneous or arbitrary seizures. *The procedural protection is adequate if it represents a fair accommodation of the respective interests of creditor and debtor.*
>
> 634 F.2d at 58 (emphasis added).

670 F.2d at 1328.

Prior to the *Northern Pipeline* decision, several bankruptcy judges rendered decisions on the propriety of service of process by mail in the context of due process considerations. Even though these rulings are predicated on a jurisdictional scheme which was later declared invalid by *Northern Pipeline*, the jurisdictional grant to the district courts contained in BRA remained intact in BAFJA. Therefore, these cases appear to have some relevance to our discussion.

In *Whitlock v. Worrall (In re American Aluminum Window Corp.)*, 15 B.R. 803, 8 Bankr.Ct.Dec. (CRR) 713 (Bankr.Mass. 1981), a trustee brought a complaint under § 547(b) for the recovery of an alleged preferential transfer, asserting jurisdiction under the former version of 28 U.S.C. § 1471. Service of process was made pursuant to Rule 704, and the defendant argued that it had been denied due process. The Bankruptcy Judge reviewed the Fifth Amendment and service of process under Rule 704, and ultimately concluded:

> Nationwide service of process pursuant to B.R. 704 does not violate [the] Fifth Amendment. *In re Trim Lean Meat Products, Inc.*, 11 B.R. 1010, 1012 (D.Del.1981), *In re G. Weeks Securities, Inc.*, 5 B.R. 220, 226 (BC WD TN 1980).

15 B.R. at 808, 8 Bankr.Ct.Dec. (CRR) at 717.

*Whitlock* can be distinguished from the "non-core" proceedings in Windsor in that the preference suit in *Whitlock* was a "core" matter. Furthermore, the defendant had actually received service of the complaint in that case and had appeared in the proceedings. The real issue before the Court was *in personam* jurisdiction and not the procedural due process question posed in Windsor by the absence of any record of service.

On the subject of procedural due process, it has been stated:

> Procedural due process mandates that a litigant receive notice and have an opportunity to be heard. 16A Am.Jr.2d Constitutional Law § 827, page 1013 (and cases cited therein). The notice must be "reasonable and adequate for the purpose, due regard being had to the nature of the proceedings and the character of the rights which may be affected by it."

16A Am.Jur.2d Constitutional Law § 829, pages 1017–1018 (and cases cited therein). However, procedural due process does not guarantee or prescribe any particular form of notice. Actual personal notice is not always necessary; constructive or substituted service (*e.g.,* notice by mail) is constitutionally permissible in certain circumstances. 16 Am. Jur.2d Constitutional Law § 829, page 1019; § 831, pages 1021–1022 (and cases cited therein).

*In re G. Weeks Securities, Inc.,* 5 B.R. 220, 226 (Bankr.W.D.Tenn.1980).

In *Whitlock,* the Court noted that although courts must act within the limits of due process, the special bankruptcy context requires that they "be able to proceed with an expeditious and orderly administration of the estate." 15 B.R. at 808, 8 Bankr.Ct. Dec. (CRR) at 716. The court also cited two (2) pertinent Ninth Circuit decisions:

*See also In re Beverly Crest Convalescent Hospital,* 548 F.2d 817 (9th Cir. 1976) in which the bankruptcy judge's approval of a letter agreement without notice of a hearing was held not to be a denial of due process when the parties had attended all pertinent hearings. The Ninth Circuit found no violation of due process when the bankrupt, who was incarcerated but represented by counsel was not present at a hearing before a special master and a jury trial stating that "(t)here is no constitutional right for a litigant to be personally present during the trial of a civil proceeding." *Faucher v. Lopez,* 411 F.2d 992, 996 (9th Cir.1969). 15 B.R. at 808, 8 Bankr.Ct.Dec. (CRR) at 716.

Perhaps the most comprehensive due process assessment of service under Rule 704 was made by the Honorable Ralph H. Kelley in *Nixon Machinery Company v. Roy Energy, Inc.* (*In re Nixon Machinery Company*), 15 B.R. 131, Bankr.Ct.Dec. (CRR) 373 (Bankr.E.D.Tenn.1981). Although service was undisputed and the defendants actually appeared in the *Nixon* proceedings, the factual background and procedural posture of *Nixon* is analogous to the Windsor matters. A "related" proceeding was involved, specifically, an account receivable collection action. Also, service of the complaint in *Nixon* was by mail, in accordance with Rule 704(c).

Judge Kelley recognized and addressed the distinction between a "substantive due process" inquiry and the type of "procedural due process" concern which is at issue here. Observing that the defendants had admitted receiving service by mail, Judge Kelley noted that "[a]n objection to process or service of process is sometimes used to raise the question of jurisdiction over the defendant." 8 Bankr.Ct.Dec. (CRR) at 373 (citation omitted). Although the defendants' objection to service was intended to raise a jurisdictional question, Judge Kelley nevertheless spoke to the legality of service of process by mail:

In any event, service of process by mail is proper in bankruptcy proceedings. Bankruptcy Rule 704 provides....

The defense that service of process was insufficient must be rejected.

.... Service by mail, as done in this proceeding, is not inconsistent with any provision of the Bankruptcy Code.

15 B.R. at 132 & n. 3, 8 Bankr.Ct.Dec. (CRR) at 373–374 & n. 3.

VII. *The 1976 Amendment to Rule 704— Abandonment of the Requirement of Acknowledgment Due to the Exigent Circumstances of Bankruptcy*

Rule 704 of the Rules of Bankruptcy Procedure was amended in 1976. Prior to the 1976 Amendment, Rule 704 did require a signed receipt for service by mail to be valid. The exigent circumstances attendant to bankruptcy matters provided the rationale for a relaxation of the prior standard. The Advisory Committee Note to the 1976 Amendment stated:

*Subdivision (c).* '[F]irst-class mail postage prepaid' is substituted for 'mail requiring a signed receipt' as the authorized mode of making service by mail in the United States. Experience with the provision requiring a signed receipt has been unsatisfactory. Although the defendant's correct address is used for the mailing, the defendant is often unavailable to the delivering postman, either to

sign or to refuse delivery. First-class mail suffices for service pursuant to Rule 5(b) of the Federal Rules of Civil Procedure and for many other purposes ...

Subdivision (b) of Bankruptcy Rule 7004 simply retains the mode of service contained in former Bankruptcy Rule 704, which was apparently found to have "proven satisfactory." *See* Advisory Committee Note to Bankruptcy Rule 7004.

Considerations of expeditious and orderly bankruptcy administration are paramount under BAFJA, as they were under prior law:

A quickly accessible court attuned to early decisions has been and continues to be far less expensive to the estate than the procedure of going to any number of state courts.... The increasing cost of litigation has been a matter of concern in all courts. Its effect is greatly enhanced in the financial condition attendant upon bankruptcy.... Should the question be asked of why if everyone else must wait their turn of several years, bankruptcy must be pushed ahead, there are at least two answers. First as stated, *rights are lost without speed and* second, most litigation involves the right of two adversaries while *bankruptcy affects many persons.*

Cowans, "The Bankruptcy Court and Its Jurisdiction" *reprinted at* 42 B.R. No. 2 (Nov. 13, 1984 Advance Sheet Yellow Sheets pp. 17, 24) (emphasis added).

The Federal Civil Rules relax the acknowledgment requirement *only* with respect to the service of pleadings *other than complaints.* Presumably, because actual service of a *complaint* is essential to jurisdiction over the defendant, a record of its receipt may be seen as a mandatory pre-condition to the entry of judgment, especially by default. The same may not be said about a subsequent pleading, like a motion, which is served only *after in personam* jurisdiction has been established.

The legislative history to the 1976 Amendment to Rule 704(c) may not be persuasive evidence of the due process propriety of service under the Rule if, in fact, the drafters of amended Rule 704(c) did not intend for it to apply to the type of "related" proceeding in which service is fundamental to jurisdiction. In the Note to Rule 704, the Advisory Committee stated: *"No provision of this rule,* of course, extends *to service of process for the purpose of plenary litigation* brought by or against the trustee or the bankrupt." At that time, the only type of complaints which *could* be served by mail under Rule 704 were complaints in "summary" matters.

In conclusion, it is clear that a "due process right" has been implicated in these proceedings, and the protections of the Due Process Clause have been invoked. It remains to be determined what the actual requirements of due process are in the circumstances at hand.

Under the standard test, the determination must result from a balancing of the respective interests and the potential "risk" attendant to the deprivation of the right. In the context of bankruptcy, or the "creditors remedies" context, this balancing must include the special interests of the bankruptcy participants. Moreover, it is well established that there is a need for order and expeditious administration in a bankruptcy case, and this is an ameliorative element in the balancing formula.

The "risk" to the respective defendants, whose property rights are potentially "implicated" by the entry of judgment in these matters, may not be of sufficient countervailing weight in this balancing test for the following reason. Even assuming *arguendo* that the defendants never actually received service of the Complaints in these cases, no deprivation of property will occur merely upon the entry of a default judgment. Nor can it occur until the stage of execution on the judgment, at which point any failure of service will serve as a defense against improper deprivation of property. Lack of jurisdiction is and continues to be a defense to execution, and lack of service of the complaint will serve as a basis for asserting that the court issuing the judgment lacked jurisdiction. *See, e.g.,* Fed.R.Civ.P. 60(b), 62; Bankruptcy Rules 9024, 7062.

**738**

Upon threat of execution, the defendant may always assert the absence of service and the attendant defense that the court entering the order had no jurisdiction over the person because the complaint was never received.

For the above reasons, we believe that Bankruptcy Rule 7004(b) may withstand a constitutional due process challenge.

United States District Court, W.D. Missouri, W.D.